**CHAPARRAL RESOURCES, INC., a Colorado corporation, Plaintiff-Appellant and Cross-Appellee,**

v.

**MONSANTO COMPANY, a Delaware corporation, and BHP Petroleum Company, Inc., Defendants-Appellees and Cross-Appellants.**

Nos. 85–2290, 85–2335.

United States Court of Appeals, Tenth Circuit.

June 14, 1988.

---

Ralph B. Rhodes (Charles G. Thomas, with him on the brief), Denver, Colo., for plaintiff-appellant and cross-appellee.

Sheryl L. Howe (Thomas C. McKee, with her on the brief), of Clanahan, Tanner, Downing & Knowlton, Denver, Colo., for defendants-appellees and cross-appellants.

Before LOGAN, SEYMOUR and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

This diversity action concerns a contractual agreement whereby Geophysical Systems Corporation (Geo) would provide seismic survey data to defendants-appellees and cross-appellants Monsanto Company and BHP Petroleum Company Inc. (collectively Monsanto). Plaintiff-appellant and cross-appellee Chaparral Resources, Inc. (Chaparral), Geo's assignee, brought this action to re-

cover damages for Monsanto's alleged breach of the contract. Following a bench trial, the district court entered judgment in favor of Chaparral and awarded as damages the cost of the survey data received by Monsanto prior to its repudiation of the contract. As reflected in the court's amended judgment, the damages totalled $252,375, including prejudgment interest at the statutory rate of 8% per annum. The court also awarded as costs expert witness fees totalling $7,677.

Chaparral appeals, arguing that it should recover the full price of the contract as modified and that it should be awarded a higher rate of prejudgment interest. In its cross-appeal, Monsanto contends that the district court erred in finding that the contract had not been rescinded and that Geo did not materially breach the time provisions in the agreement. Monsanto also contends that under federal law, expert witness fees are not fully taxable as costs. We affirm in part and reverse in part.

In May 1981, Geo, Chaparral and Adams Exploration Company entered into an agreement calling for Geo to conduct a geophysical survey in the "Owl Creek Thrust" area of central Wyoming. The parties contemplated that the resultant seismic interpretations would be purchased by oil companies to select promising areas in which to drill. Geo then obtained commitment agreements from six companies, including Monsanto. On June 26, 1981, Monsanto contracted with Geo to purchase data obtained from 237 miles of the seismic survey, at a rate of $1,800 per mile. According to their agreement, delivery of the survey data was to be completed by January 1, 1982.

Geo did not meet the anticipated delivery date. During the fall of 1981, it sent several status reports to Monsanto explaining the reasons for the forthcoming delay. Monsanto received its first shipment of survey data on April 18, 1982, and by mid-May had received 110 miles of data. Via a letter dated June 7, Monsanto informed Geo that it considered both the quality of the data and the dates of delivery not to be in conformance with the parties' contract.

The letter stated that because the problems constituted material breaches of the contract, Monsanto deemed the contract void and would make no payments. Monsanto returned the data that it had received.

Responding with a letter dated July 8, Geo disagreed with Monsanto's characterization and requested an opportunity to review the data with Monsanto. Geo's letter also included a conditional offer to rescind the contract, stating that if, after a review of the data, Monsanto still was not satisfied that the information was of the highest quality available, Geo, despite its opinion that it had not materially breached the contract, would be willing to rescind the agreement provided both parties agreed to waive any consequential or other damages.

Representatives of all the companies participating in the survey, including Monsanto, attended a meeting on July 12. They mutually agreed that Geo would cancel a portion of the survey program, thereby reducing to 198.5 the total number of data miles owed to Monsanto. On July 23, representatives of Geo and Monsanto met to discuss the data previously delivered by Geo. Upon his request to see certain field monitor information, Monsanto's representative was told that the information was in Pasadena, California, but he did not go there to review the data. On August 31, Monsanto advised Geo that its position was to accept Geo's offer of rescission. While the remaining 88.5 survey miles due to Monsanto were apparently available for delivery in August and September, Geo did not ship the data.

As assignee of Geo's rights under the contract, Chaparral filed a complaint in state court seeking damages reflecting the agreed price per mile of 198.5 miles of survey data. Upon Monsanto's petition, the case was removed to federal court. Ruling in favor of Chaparral, the district court found that there had been no rescission and that Monsanto's repudiation constituted a breach of the contract. Rec. vol. I at 106–07. The court, however, limited Chaparral's recovery to the contract price of the 110 miles of data initially deliv-

ered to Monsanto, stating that Geo was not justified in sending additional data after Monsanto's repudiation.[1] *Id.* at 107.

## I.

Monsanto poses several arguments addressing the issues of whether the district court erred in finding that there was no rescission and that Geo did not materially breach the time and quality provisions of the contract. Our conclusion that the record evidence provides ample support for the district court's findings obviates the need to address the sundry arguments posed by Monsanto.

■ In a contract action, our review of findings regarding a breach of the contract is controlled by the clearly erroneous standard. Fed.R.Civ.P. 52(a); *Davis Cattle Co., Inc. v. Great Western Sugar Co.,* 544 F.2d 436, 439 (10th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). Additionally, when extrinsic evidence is introduced to ascertain the meaning of contract terms, as in the instant case in which Monsanto attempted to establish certain industry standards, the trial court's interpretation of the contract terms is factual and cannot be set aside unless clearly erroneous. *See Cavic v. Pioneer Astro Industries, Inc.,* 825 F.2d 1421, 1424 (10th Cir.1987).

■ Upon addressing Monsanto's defense that the agreement had been rescinded by the parties' letters of July 8 and August 31, the district court determined that Monsanto had failed to establish an agreement to rescind the contract. Rec. vol. I at 106. The court found that Geo's letter was "at most" a conditional offer to rescind, the contingency being an opportunity to review the data with Monsanto's representatives, and that Monsanto did not make a reasonable effort to meet Geo's condition. *Id.* In regard to Monsanto's claim that Geo had breached the contract,

the court found that the contract contained neither a "time is of the essence" provision nor a provision guaranteeing the quality of the data, and that Monsanto had not presented sufficient evidence proving that such conditions were implied by industry standards and usage. *Id.* at 106–07; *see* rec. vol. VI at 71, 92. The district court's specific and detailed findings are amply supported by the record and are not clearly erroneous.

## II.

Chaparral argues that it should recover damages in the amount of $357,300, which represents the contract price of the 198.5 miles of survey data which Geo was obligated to provide to Monsanto under the contract as modified. The crux of Chaparral's argument is that despite Monsanto's apparent repudiation of the contract, Geo was compelled to complete performance because of its commitments to the other participants in the survey. While continuing to maintain that the district court erred in finding that it had breached the contract by wrongful repudiation, Monsanto asserts in the alternative that Chaparral failed to prove any damages incurred after the repudiation and therefore is not entitled to recover for the 88.5 miles of survey data subsequently completed by Geo.

■ Our review of a trial court's determination of the amount of damages resulting from a breach of contract is governed by the clearly erroneous standard. Fed.R. Civ.P. 52(a); *Paramount Pictures Corp. v. Thompson Theatres, Inc.,* 621 F.2d 1088, 1091 (10th Cir.1980). We are not constrained by the clearly erroneous standard, however, when the trial court's computation of damages is predicated on a misconception of the governing rule of law. *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 501, 104 S.Ct. 1949, 1959–60, 80 L.Ed.2d 502 (1984); *Pav-*

---

1. As stated, Geo did not ship any survey data to Monsanto after May of 1982. In its amended judgment, the district court recognized that its previous reference to data delivered after Monsanto's repudiation was not correct, but stated that the incorrect reference was "of no signifi-

cance because the court adheres to the view that under the evidence the plaintiff is limited to recovery of the contract price for the 110 miles delivered before June 7, 1982." Rec. vol. I at 115.

*lides v. Galveston Yacht Basin, Inc.,* 727 F.2d 330, 339 n. 16 (5th Cir.1984).

Both sides have extensively argued the issue of damages, discussing various theories regarding remedies for a breach of contract. Those arguments notwithstanding, we agree with Chaparral's assessment of this action as a straightforward case involving its expectation interest under the modified contract. When a contract has been breached, "[d]amages are awarded in order to make the non-breaching party whole." *Great Western Sugar Co. v. Pennant Products, Inc.,* 748 P.2d 1359, 1361 (Colo.Ct.App.1987). The general measure of damages is the amount which places the parties in the same financial position they would have occupied had the contract terms been fulfilled. *Republic Nat'l Life Ins. Co. v. Red Lion Homes, Inc.,* 704 F.2d 484, 488 (10th Cir.1983); *Great Western Sugar Co. v. Pennant Products, Inc.,* 748 P.2d at 1361. That amount may be reduced by any costs or other losses that the injured party could have avoided. *General Ins. Co. of America v. City of Colorado Springs,* 638 P.2d 752, 759 (Colo.1981).

■ Chaparral has not been placed in the same financial position it would have occupied had the terms of the modified contract been fulfilled, and consequently has not realized its expectation interest, i.e., the benefit of its bargain. *See* Restatement (Second) of Contracts § 344(a) (1981). Applying essentially a restitutionary standard in limiting Chaparral's recovery to the cost of the data actually delivered to Monsanto, the district court implicitly viewed the contract as terminated upon Monsanto's letter of repudiation.[2] Despite Monsanto's notification that it would not honor its obligations under the agreement, the contract had not been rescinded and therefore re-

mained in force. The controlling legal principle guiding the district court's determination of damages should have been compensatory damages for Monsanto's wrongful repudiation. Under this standard, Chaparral would be compensated for its expectation interest under the modified contract.

We conclude that the district court applied the wrong legal standard in calculating the damages resulting from the contract breach. Due to its commitments to the other subscribers of the seismic survey, Geo was required to complete performance of the contract and thus could not avoid the costs of completing the remainder of the survey data owed to Monsanto after Monsanto's apparent repudiation. *See Resolute Ins. Co. v. Percy Jones, Inc.,* 198 F.2d 309, 312–13 (10th Cir.1952); *Combined Communications Corp. v. Bedford Motors, Inc.,* 702 P.2d 281, 282 (Colo.Ct.App. 1985); *see also* 5 A. Corbin, Corbin on Contracts § 1042 (1964) (stating that even though defendant has notified plaintiff to stop performance of the contract, plaintiff is not required to stop performing if it is bound by a duty to others to go ahead). The district court's finding that no consequential damages were shown is not disputed by Chaparral. Chaparral therefore is entitled to recover the contract price per mile of 198.5 miles of survey data.

### III.

■ Contending that it should have been awarded "moratory interest" pursuant to Colo.Rev.Stat. § 5–12–102(1)(a), Chaparral asks this court to remand with instructions to the district court either to take judicial notice of an objective measure of the minimum cost of money or to receive additional evidence to determine the gain or

---

2. In its order, the district court stated that once it had notice of Monsanto's breach, Geo was no longer justified in sending any additional data. Rec. vol. I at 107. The court determined that "[s]uch a breach could be a basis for the recovery of consequential damages, but none has been proven in the evidence in this case." *Id.* The court also found that there was "no showing of the use of the additional data" by Monsanto. *Id.* As discussed in n. 1, *supra,* although the court recognized in its amended judgment

that Geo had not in fact delivered any additional data after Monsanto's repudiation, it provided no further justification or theoretical basis for adhering to its limitation of Chaparral's recovery to a portion of the modified contract. *See id.* at 115. We agree with Chaparral that neither the district court's reference to consequential damages nor its allusion to a theory of restitution properly addresses the facts of this case. *See* Brief for Plaintiff–Appellant at 14.

benefit realized by Monsanto upon wrongfully withholding the funds owed under the contract.

Under Colo.Rev.Stat. § 5–12–101, the legal rate of interest is 8% per annum. Subsection (a) of Colo.Rev.Stat. § 5–12–102(1)[3] provides that creditors shall receive prejudgment interest in an amount which fully recognizes the gain or benefit realized by the party wrongfully withholding its funds, while subsection (b) provides that, at the election of the claimant, the rate of interest for money wrongfully withheld will be 8%. The district court declined to award prejudgment interest pursuant to subsection (a) because there was no evidence in the record pertaining to any gain or benefit realized by Monsanto's wrongful withholding of the money owed under the contract. Rec. vol. I at 108.

The district court was correct in awarding prejudgment interest at the statutory rate of 8% from the date of Monsanto's repudiation. If an award of moratory interest damages is justified but there is no proof of gain from the wrongful retention of money, a trial court acts within its discretion in measuring the amount of such damages at the statutory rate of interest.[4] *E.B. Jones Constr. Co. v. City and County of Denver*, 717 P.2d 1009, 1015 (Colo.Ct. App.1986); *Alfred Brown Co. v. Johnson–Gibbons & Reed Western Paving–Kemper*, 695 P.2d 746, 749–50 (Colo.Ct.App.1984). Here, absent any proof presented by Chaparral showing the amount of gain realized by Monsanto upon wrongfully withholding the funds owed under the contract, the district court had no basis upon which to award prejudgment interest pursuant to Colo.Rev.Stat. § 5–12–102(1)(a).

## IV.

Monsanto contends that the district court erred in awarding $7,677.68 in expert witness fees, arguing that under federal law, which in a diversity action should govern the taxation of costs, such fees should not have exceeded the statutory rate. We agree.

 In a diversity case, federal law controls in regard to the assessment of

---

**3.** Colo.Rev.Stat. § 5–12–102 provides in pertinent part:

> **Statutory interest.** (1) Except as provided in section 13–21–101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
>
> (a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
>
> (b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

**4.** While Chaparral correctly points out that § 5–12–102(1)(a) is essentially a codification of the common law concept of moratory interest, *see Davis Cattle Co. v. Great Western Sugar Co.,* 544 F.2d at 441–42, we note that a distinction has been drawn between moratory interest as an element of damages and statutory interest for the wrongful retention of money owed. *See, e.g., Lowell Staats Mining Co., Inc. v. Pioneer*

*Uravan, Inc.,* 645 F.Supp. 254, 255–56 (D.Colo. 1986); *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 893 n. 9 (Colo.1986). Whether moratory interest damages will be allowed and at what rate is a matter committed to the sound discretion of the trial court in consideration of the equities of the case. *Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.,* 645 F.Supp. at 257; *Alfred Brown Co. v. Johnson–Gibbons & Reed Western Paving–Kemper,* 695 P.2d 746, 750 (Colo.Ct.App.1984). As a corollary, if moratory interest is justified but there is no proof of gain from the wrongful retention of money, the trial court is within its discretion in measuring moratory interest damages at the statutory rate. *E.B. Jones Constr. Co. v. City and County of Denver,* 717 P.2d 1009, 1015 (Colo.Ct. App.1986). Where, as here, prejudgment interest is sought pursuant to Colo.Rev.Stat. § 5–12–102(1)(a), we conclude that a trial court faced with a record devoid of evidence relating to the amount of the withholding party's gain or benefit lacks discretion to award interest at a rate other than the statutory rate of 8% per annum. We must reject Chaparral's request that we instruct the district court to take judicial notice of an objective rate of the use of money, because to do so would relieve Chaparral of its burden of establishing the amount of Monsanto's gain and would deprive Monsanto of an opportunity to present opposing evidence pertaining to the proper benchmark to be applied.

costs. *Bosse v. Litton Unit Handling Systems, Division of Litton Systems, Inc.*, 646 F.2d 689, 695 (1st Cir.1981); *see* Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 555 (1984); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2669 (1983). "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."[5] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, —— U.S. ——, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). Thus, unless authorized by statute or express agreement, a party's expert witness fees are recoverable only up to the $30–per–day statutory limit applicable to any witness. *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1550 (10th Cir.1987); *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358, 1363 (10th Cir.1979), *cert. denied*, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980).

The district court recognized, but declined to follow, the federal rule regarding the taxation of expert witness fees as costs. Rec. vol. I at 120. Stating that it appeared "to be the established law" of Colorado under Colo.Rev.Stat. § 13–33–102(4) that expert witness fees are to be allowed in an amount set by the court, the district court concluded that, in the exercise of its discretion, it would award the actual costs of such fees "to avoid a penalty to the prevailing plaintiff who chose the state forum." *Id.*

Because federal procedural law governs the taxation of costs, any discretion afforded the trial court would arise under federal law, namely Fed.R.Civ.P. 54(d),[6] and not under state law. That discretion is constrained by 28 U.S.C. §§ 1821 and 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 107 S.Ct. at 2498–99. In the absence of an explicit statutory authorization, a trial court has no discretion under Fed.R.Civ.P. 54(d) to tax the actual costs of expert witness fees. *Id.*

Colo.Rev.Stat. § 13–33–102(4) does provide for additional compensation for expert witnesses; however, the determination of whether such compensation is to be awarded as costs is committed to the sound discretion of the trial court. *Lamont v. Riverside Irrigation Dist.*, 179 Colo. 134, 498 P.2d 1150, 1154 (1972); *Crawford v. French*, 633 P.2d 524, 526 (Colo.Ct.App. 1981). A discretionary award of costs is not tantamount to an express statutory mandate.[7] *See Bright v. Land O'Lakes, Inc.*, 844 F.2d 436, 444 (7th Cir.1988) (holding that an assessment of expert witness fees pursuant to a Wisconsin statute authorizing fee shifting of actual costs to the prevailing plaintiff is not restricted by 28

---

5. 28 U.S.C. § 1920 provides in pertinent part:
A judge or clerk of any court of the United States may tax as costs the following:

. . . . .

(3) Fees and disbursements for printing and witnesses;

. . . . .

28 U.S.C. § 1821 provides in pertinent part:
(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States ... shall be paid the fees and allowances provided by this section.

. . . . .

(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

6. Fed.R.Civ.P. 54(d) provides:
**Costs.** Except when express provision therefor is made either in a statute of the United States or these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

7. In *Cleverock Energy Corp. v. Trepel*, 609 F.2d at 1363 n. 3, the panel expressly did not consider whether a federal court sitting in diversity may, in the exercise of its discretion, enforce an expressed state policy of assessing expert witness fees as costs. Whether a federal court faced with a state statute authorizing the awarding of expert witness fees as costs would have discretion to decline to follow the statute is somewhat questionable; however, given the absence of an explicit statutory authorization in the instant case, we need not address either that question or the question left open in *Cleverock*.

U.S.C. § 1821); *Kivi v. Nationwide Mut. Ins. Co.*, 695 F.2d 1285, 1289 (11th Cir. 1983) (disallowing expert witness fees in excess of 28 U.S.C. § 1821 because entitlement to such fees under Florida statutes is not a substantive right). Because the Colorado statute relied on by the district court does not explicitly authorize the assessment of expert witness fees as costs, the court was bound by the limitations set out in the federal costs statute and, as a consequence, its taxation of expert witness fees must be limited to the per diem fee specified in 28 U.S.C. § 1821.

We affirm the district court's judgment in favor of Chaparral on the breach of contract claim and its decision to award prejudgment interest at the statutory rate of 8% from the date of Monsanto's repudiation of the contract. We reverse the judgment on the damages award and remand for the recalculation of compensatory damages and prejudgment interest consistent with this opinion. We also reverse the award of expert witness fees and remand for the recalculation of costs in conformance with 28 U.S.C. §§ 1821 and 1920.

AFFIRMED IN PART and REVERSED IN PART and REMANDED.