**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MARY GARCIA,

      Plaintiff - Appellee - Cross-
      Appellant,

v.

WAL-MART STORES, INC.,

      Defendant - Appellant - Cross-
      Appellee.

Nos. 98-1300 & 98-1315

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 96-M-1623)

---

A. Peter Gregory (Peter W. Burg, Scott J. Eldredge, Thomas W. Henderson and
Diane Vaksdal Smith of Burg Simpson Eldredge Hersh & Houliston, P.C. with
him on the briefs) for the appellant.

John D. Gehlhausen (Curtis L. Fleming with him on the briefs) of John
Gehlhausen, P.C., Lamar, Colorado, for the appellee.

---

Before **HENRY**, **LUCERO** and **MURPHY**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

While shopping at Wal-Mart, Mary Garcia, sole owner of a small business, was knocked to the floor by a Wal-Mart employee pushing a cart. She brought a diversity suit against Wal-Mart Stores, Inc. ("Wal-Mart") in federal district court, alleging negligence, and the jury awarded her damages. We must determine whether the district court erred in declining to instruct the jury on the issues of mitigation and apportionment of damages and in failing to award Garcia "actual costs" pursuant to a Colorado cost-shifting statute, Colo. Rev. Stat. § 13-17-202(1)(a)(I) (1999). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm the jury's verdict, concluding Wal-Mart failed to object in timely fashion to the omission of the mitigation instruction and the district court properly decided there was no "competent evidence" to support the apportionment instruction. However, applying the Erie doctrine, we hold that Colorado's cost-shifting statute applies and remand to the district court for the determination of "actual costs" and the award of those costs to Garcia.

## I

On January 25, 1995, appellee/cross-appellant Garcia and her husband went shopping at Wal-Mart. While Garcia searched for film in one of the aisles, she was hit by a cart pushed by a Wal-Mart employee and knocked to the floor, hurting her back, which had already been causing her pain before the incident. Several physicians and one psychologist, each after having examined her once,

determined that a portion of her back pain may have been psychological or "non-organic" in nature, i.e., not a direct result of her physiological condition. Most of them, however, did not deny that at the same time she might be suffering physical pain caused by her physical injury. Her treating physicians also testified that Garcia suffered from chronic degenerative disc disease prior to the incident at Wal-Mart.

Before she was hit, Garcia owned and operated "Mary's Burritos." Rising between 4:30 and 5:00 a.m. on weekday mornings, she would prepare, by 8:00 a.m., between twelve and eighteen dozen burritos, weighing almost forty pounds, load them into a cooler, and deliver them to local businesses. After the incident at Wal-Mart, she found herself physically unable to lift the cooler and found it very difficult to get into and out of her car. That physical incapacitation rendered her unable to continue operating her business, which she turned over to her sister-in-law, Valerie Gonzales.

An economist estimated her economic losses from her inability to pursue her business to be between approximately $631,000 and $908,000—the former figure based in part on Garcia's loss of earnings from her business, and the latter figure based in part on average earnings of someone of her age and education level. There was also testimony on the value of her business, the degree of her

disability with regard to physical functioning and performance of household chores, and her projected yearly medical expenses.

At trial, Wal-Mart submitted proposed jury instructions on both mitigation of damages by Garcia and apportionment of damages contingent on the jury's ability to separate out the portion of Garcia's damages attributable to pre-existing conditions. After the close of argument, the district court furnished the parties with the set of instructions it intended to submit to the jury, admonishing them to review those instructions. The district court did not instruct on mitigation of damages, and Wal-Mart did not object to that omission before the jury retired to consider its verdict.

The district court also did not give the portion of Wal-Mart's proposed apportionment of damages instruction which stated,

> If you are able to separate the amount of damages, if any, caused by the negligence of the Defendant from the amount of damages, if any, caused by the ailment or disability which existed before January 25, 1995, then the Plaintiff is entitled to recover damages caused only by the negligence of the Defendant.
> If you are unable to separate the damages caused by the ailment or disability which existed before January 25, 1995, and the damage caused by the negligence of the Defendant, then the Defendant is legally responsible for the entire amount of damages you find the Plaintiff has incurred.

(Appellant's App. at 48.) Wal-Mart's counsel thrice argued that an apportionment instruction was warranted, first stating "there was evidence of the apportionment issue through the deposition of Dr. Wong" (Appellant's App. at 190), an

orthopedic surgeon, then stating that the testimony of Dr. Quintero, a neurologist, "addressed [the] issue [of apportionment] by indicating that the only problem was ligamentous strain . . . [and] [a]nything after that was not caused by this incident" (id. at 229), and finally reiterating those arguments on the morning before the court instructed the jury. After each suggestion by Wal-Mart that an apportionment instruction be included, the court indicated it did not find the evidence sufficient to support an apportionment instruction.

The jury awarded damages to Garcia in the amount of $75,000 for non-economic losses, $268,000 for economic losses, and $7,000 for physical impairment or disfigurement, for a total award of $350,000. The trial court further awarded prejudgment interest in the amount of $110,100, an amount to which the parties stipulated, and litigation costs in the amount of $2,236.90 pursuant to 28 U.S.C. § 1920, but denied Garcia's actual costs under Colo. Rev. Stat. 13-17-202(1)(a)(I) (1999), which provides for the taxation of costs based on Wal-Mart's pretrial rejection of a settlement offer lower than the eventual judgment.[1] Wal-Mart appeals from the jury verdict, and Garcia cross-appeals,

---

[1] Colo. Rev. Stat. § 13-17-202 (1999) provides as follows:

(1)(a) Notwithstanding any other statute to the contrary, in any civil action of any nature commenced or appealed in any court of record in this state:

(I) If the plaintiff serves an offer of settlement at any time more than ten

(continued...)

claiming an additional $18,952.50 in "actual" litigation costs pursuant to the foregoing statute.

## II

"We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." United States v. Cerrato-Reyes, 176 F.3d 1253, 1262 (10th Cir. 1999) (citing Gust v. Jones, 162 F.3d 587, 596 (10th Cir. 1998)).

### A

Because Wal-Mart did not object to the court's failure to give the mitigation of damages instruction before the jury retired, and because the absence of such an instruction did not result in a fundamental injustice, we reject Wal-Mart's claim that the district court erred by not instructing on mitigation. Fed. R. Civ. P. 51 unequivocally provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the

---

[1](...continued)
days before the commencement of the trial that is rejected by the defendant and the plaintiff recovers a final judgment in excess of the amount offered, then the plaintiff shall be awarded actual costs accruing after the offer of the settlement to be paid by the defendant.

grounds of the objection." This Court articulated the policy behind the rule in

Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 553 (10th Cir. 1999) (quotations

omitted), cert. denied, 120 S. Ct. 48 (Oct. 4, 1999): "[T]he purpose of the

objection is to give the court an opportunity to correct any mistake before the jury

enters deliberations." Similarly, under 10th Cir. R. 28.2(C)(3)(b), if an appeal is

based on "the giving or refusal to give a particular jury instruction," the appellant

must "state where in the record a proper objection was made to the ruling and

whether the objection is recorded and ruled on." Wal-Mart concedes that it did

not object to the district court's failure to give a separate mitigation of damage

instruction prior to the jury retiring to consider its verdict.[2]

---

[2] Wal-Mart cites Monsma v. Central Mutual Insurance Co., 392 F.2d 49 (9th Cir. 1968), for the proposition that the district court should have furnished the jury with a mitigation of damages instruction in response to a question from the jury during its deliberations. The jury had inquired about two special verdict questions, namely, "Was the plaintiff, Mary Garcia, negligent?" and "Was the plaintiff's negligence, if any, a cause of her own claimed injuries, damages or losses?" (Appellant's App. at 91.) With regard to those special verdict questions, the jury asked whether "the words 'negligent/negligence' in these questions refer solely to the incident at Wal-Mart or also to subsequent decisions or actions or inactions made by the plaintiff." (Id. at 251-52.) The court responded in writing by stating that "the reference is solely to the incident at the Walmart [sic] store." (Id. at 95.)

The Ninth Circuit's decision in Monsma does not stand for the proposition appellant urges. In that case, the district court intended to give a tendered jury instruction and so informed counsel, afterwards inadvertently omitting the instruction. Monsma, 392 F.2d at 51-52. As a result, the district court consented, over opposing counsel's objection, to give the omitted instruction after the jury retired to consider its verdict. Id. at 52. The facts of Monsma are not analogous

(continued...)

Absent a proper objection, we apply the plain error standard of review. But "[o]nly rarely will we reverse based on allegedly erroneous instructions to which there was no objection at trial; the party claiming plain error has the heavy burden of demonstrating fundamental injustice." Medlock, 164 F.3d at 553 (quotations omitted). "Mitigation or failure to mitigate is an affirmative defense that may be raised by the defendant and the defendant bears the burden of proving the defense." Fair v. Red Lion Inn, 943 P.2d 431, 437 (Colo. 1997) (citations omitted). Under Colorado law, "the defense of failure to mitigate damages will not be presented to the jury unless the trial court determines there is sufficient evidence to support it." Id. (citations omitted).

We discern no "fundamental injustice" in the district court's failure to submit a mitigation instruction to the jury in this case. Medlock, 164 F.3d at 553. Based on the recommendations of two pain clinic psychologists that Garcia seek psychological counseling for depression, Wal-Mart argues Garcia failed to mitigate her damages because she did not seek psychological treatment.

_____

[2](...continued)
to those of the present case. Here, through no fault of the district court, defendant-appellant failed to object in timely fashion to the omission of the requested mitigation instruction. The Monsma court emphasized that "the procedure followed" by the district court in that case was "not commended." Id. Under the different circumstances of the present case, we discern no compelling grounds for departure from Fed. R. Civ. P. 51 and the teaching of Medlock. See Medlock, 164 F.3d at 553.

- 8 -

However, Garcia's testimony that she could not afford such treatment was unchallenged, and the district court judge declared that such mitigation was not legally required, stating "[i]t isn't required under the law that she undertake a course of treatment that she couldn't pay for." (Appellant's App. at 254.) Wal-Mart cites no case law to support its allegation that Colorado requires the mitigation instruction it seeks under the circumstances of this case, and we apprehend no plain error in the district court's decision.

The same can be said of Wal-Mart's assertion that Garcia failed to mitigate the economic consequences of her injury by failing to get help in operating Mary's Burritos. The court found Garcia's business was "almost a personal service business that only she could do" and implicitly that efforts to employ others to continue operating the business would be futile and therefore not reasonable mitigation. (Id. at 255.) In addition, Wal-Mart offered no evidence that appropriate jobs were available for someone in Garcia's condition or that such jobs were available to someone of her educational and skill level, but instead merely presented the evidence of its medical expert that she could return to sedentary light-duty or self-paced jobs. See Wilson v. Union Pacific R.R. Co., 56 F.3d 1226, 1232 (10th Cir. 1995) ("[The plaintiff's] general failure to seek employment for eighteen months before trial does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate jobs were

available."). It was not fundamental injustice for the district court to refuse a mitigation of economic damages instruction.

**B**

We must also determine whether it was error for the district court to refuse Wal-Mart's proposed instruction that the jury apportion, if possible, Garcia's disability between its negligence and her pre-existing condition. Colorado law provides that when a defendant can demonstrate that a separable portion of a plaintiff's disability is traceable to a pre-existing condition, the defendant is liable for only that portion caused by his or her negligence. See, e.g., Stephens v. Koch, 561 P.2d 333, 334 (Colo. 1977) (en banc). If the jury is unable to separate the disability stemming from the prior condition from that attributable to the defendant's negligence, the defendant is liable for the entire disability. See id. We find no error in the district court's conclusion that Wal-Mart failed to offer evidence which would have allowed the jury to separate damages attributable to Garcia's pre-existing condition from damages stemming from Wal-Mart's negligence. An apportionment instruction was therefore unwarranted.

As evidence supporting an apportionment instruction, Wal-Mart points to the statements of two physicians. However, although Dr. David Wong, an orthopedic surgeon, stated in a deposition that he thought "the underlying difficulty was [Garcia's] sprain or strain from the accident superimposed on some

degenerative changes in the spine which were preexisting," (Appellant's App. at 178), Wal-Mart offers no Colorado case law indicating such a general statement is sufficient to allow a jury to find that Wal-Mart has borne its burden of showing the separation between pre-existing disability and disability resulting from the defendant's negligence, see Stephens, 561 P.2d at 334. Wal-Mart argues that Wong's statement, combined with the testimony of Dr. Peter Quintero that the accident caused Garcia to incur only "a soft tissue injury to the low back," (Appellant's App. at 227), which should have healed within six months, allowed the jury to apportion damages. While Quintero's testimony might allow a jury to find that Garcia's damages were less severe than those she claimed, the district court was correct in determining that that testimony provided no grounds for apportionment.

In deciding not to issue the proposed instruction, the judge declared, "I don't see how apportionment is possible in this case." (Id. at 232.) Given the paucity of evidence indicating how such apportionment might function, it was not an abuse of discretion for the court to determine that an apportionment instruction was inappropriate; and omission of Wal-Mart's urged instruction did not result in a failure to inform the jury accurately of the governing law. See Newbury v. Vogel, 379 P.2d 811, 813 (Colo. 1963) (en banc) ("[W]here a pre-existing diseased condition exists, and where after trauma aggravating the condition

- 11 -

disability and pain result, and no apportionment of the disability between that caused by the pre-existing condition and that caused by the trauma can be made, in such case, even though a portion of the present and future disability is directly attributable to the pre-existing condition, the defendant, whose act of negligence was the cause of the trauma, is responsible for the entire damage.").  Under Colorado law, therefore, it was proper for the district court to refuse the requested apportionment instruction.

### III

Our resolution of Garcia's cross-claim of error by the district court for failing to award "actual costs" pursuant to Colo. Rev. Stat. § 13-17-202(1)(a)(I) is guided by Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523 (10th Cir. 1996), which sets forth the analysis for determining whether to apply a state rule of civil procedure.  In Trierweiler, we stated,

> where a federal rule of procedure is directly on point, that rule applies. Otherwise, in the "typical, relatively unguided Erie choice," courts are to heed the outcome-determination approach while also relying on the policies underlying the Erie rule: "discouragement of forum-shopping and avoidance of inequitable administration of the laws."

Id. at 1539 (quoting Hanna v. Plumer, 380 U.S. 460, 467-68, 471 (1965)).

Applying the Trierweiler-Hanna analysis to the inquiry as to the subject matter of Colo. Rev. Stat. § 13-17-202(1)(a)(I), neither Fed. R. Civ. P. 68 nor 54(d) are "directly on point."  Trierweiler, 90 F.3d at 1539.  Rule 68 only governs

defendants' costs, while plaintiffs' costs are the subject of the Colorado statute.[3]

Neither, contrary to Wal-Mart's contention, does Fed. R. Civ. P. 54(d) necessarily

conflict with an award of "actual" costs. That section contains two relevant parts:

54(d)(1), pertaining to "costs other than attorneys' fees," and 54(d)(2), pertaining

to "attorneys' fees and related non-taxable expenses."[4] As the Third Circuit

recognized in <u>Abrams v. Lightolier Inc.</u>, 50 F.3d 1204, 1223 (3d Cir. 1995), the

---

[3] Fed. R. Civ. P. 68 provides in relevant part as follows:

Offer of Judgment. At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. . . .

[4] Fed. R. Civ. P. 54(d) provides in relevant part as follows:

Costs; Attorneys' Fees.
(1) Costs Other than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.
(2) Attorneys' Fees.
(A) Claims for attorneys' fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

- 13 -

litigation costs to be awarded "as a matter of course" under Fed. R. Civ. P.
54(d)(1) are listed in 28 U.S.C. § 1920. "Under the rules of <u>Erie</u> and <u>Hanna</u>, Rule
54(d)(1) will . . . trump a state cost shifting provision with which it conflicts."
<u>Id.</u> (further quotations omitted). But "[t]here is . . . no federal statute or rule
providing the rule of decision when a federal court is asked to award litigation
expenses other than those enumerated as section 1920 costs." <u>Id.</u> at 1223-24. In
the present case, to the extent the Colorado statute authorizes the award of "actual
costs" other than those costs authorized by 28 U.S.C. §§ 1821, 1920-23, or
another federal statute or rule, those costs are not barred by Fed. R. Civ. P.
54(d)(1). <u>See</u> <u>id.</u> at 1224.[5]

---

[5] Appellants cite <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437 (1987), in support of their argument that all state cost-shifting statutes are inapplicable in the federal courts. However, <u>Crawford Fitting Co.</u> involved the federal statute expressly providing for the taxation of expert witness fees, 28 U.S.C. §§ 1821, 1920. The Court held that "it is clear that in §§ 1920 and 1821, Congress comprehensively addressed the taxation of fees for litigants' witnesses," effectively preempting state law on such fees. <u>Id.</u> at 442. Thus, to the extent express Congressional enactments do not comprehensively address the "actual costs" at issue under Colorado law, <u>Crawford</u> does not bar the application of the Colorado cost-shifting statute. <u>Cf.</u> <u>Freeman v. Package Mach. Co.</u>, 865 F.2d 1331, 1347 (1st Cir. 1988) (holding <u>Crawford</u> inapposite with regard to recovery on a state law claim for fees and costs provided by state law); <u>Bright v. Land O'Lakes, Inc.</u>, 844 F.2d 436, 444 (7th Cir. 1988) (holding, without citing <u>Crawford</u>, that a Wisconsin statute which authorized the award of "actual costs of the action including reasonable attorney's fees" permitted the award of expenditures for expert witnesses greater than those authorized by 28 U.S.C. § 1821, and applied in federal courts to override the restrictions of 28 U.S.C. § 1821) (quoting Wis. Stat. Ann. § 135.06 (West 1974)).

In the case of Fed. R. Civ. P. 54(d)(2), involving "attorneys' fees and related non-taxable expenses," the Rule expressly refers to "the substantive law governing the action," i.e., the governing state law in a diversity action. See id. The provision "gives effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Communications, Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999) (citations omitted). As a general rule in diversity cases, if "state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 259 n.31 (1975) (quoting 6 Moore's Fed. Prac. § 54.77[2] (2d ed. 1974)). Rule 54(d)(2) does not limit the operation of state fee-shifting statutes to situations in which Congress has not already spoken, unlike Fed. R. Civ. P. 54(d)(1), which expressly permits Congress to provide for the award of specific costs, thereby preempting state law. See, e.g., MRO Communications, 197 F.3d at 1282 (looking to Nevada cost-shifting law to determine the proper taxing of attorneys' fees under Fed. R. Civ. P. 54(d)(2)).[6]

---

[6] We note that Colo. Rev. Stat. § 13-17-202(1)(b) expressly excludes attorneys' fees from the definition of "actual costs." We leave to the district court the determination of what "actual costs," if any, under Colo. Rev. Stat. § 13-17-202(1)(a)(I) may qualify as "related non-taxable expenses" under Fed. R.

(continued...)

To the extent Congress has not spoken to the specific costs Garcia claims under Fed. R. Civ. P. 54(d)(1), and to the extent, if at all, her "actual costs" may be "related non-taxable expenses" under Fed. R. Civ. P. 54(d)(2), we are squarely in the realm of the "typical, relatively unguided Erie choice." Hanna, 380 U.S. at 471. If federal courts did not employ the Colorado cost-shifting statute, that could substantially alter the amount of money an unsuccessful defendant would have to pay a successful plaintiff—a significant difference in outcome between the state and the federal courts. See Trierweiler, 90 F.3d at 1540-41. That, in turn, could lead to forum-shopping and, by treating diverse parties in federal court differently than non-diverse parties in state court, could foster "inequitable administration of the laws." Hanna, 380 U.S. at 467-68; accord Healy Co. v. Milwaulkee Metropolitan Sewerage Dist. , 60 F.3d 305 (7th Cir. 1995).

Chaparral Resources, Inc. v. Monsanto Co., 849 F.2d 1286 (10th Cir. 1988), contrary to Wal-Mart's interpretation, does not compel the district court's decision that "the Colorado statute [Colo. Rev. Stat. § 13-17-202(1)(a)(I)] is a procedural statute and is not applicable in this case filed in this court by the plaintiff under diversity jurisdiction." (Appellee's App. at 9.) At issue in Chaparral was a district court's decision not to tax the cost of expert witness fees.

---

[6](...continued)
Civ. P. 54(d)(2).

The opinion holds that "[i]n the absence of an explicit [federal] statutory authorization, a trial court has no discretion under Fed. R. Civ. P. 54(d) to tax the actual costs of expert witness fees." 849 F.2d at 1292 (citing Crawford, 482 U.S. at 442-45). There was not even an explicit state statutory authorization because the Colorado statute at issue in Chaparral left the decision to award costs "to the sound discretion of the trial court," and "[a] discretionary award of costs is not tantamount to an express statutory mandate." Id. (citations omitted).

In the present case, on the contrary, Colorado courts have interpreted Colo. Rev. Stat. § 13-17-202(1)(a)(I) to be non-discretionary: If a defendant refuses a plaintiff's offer of settlement made more than ten days before trial, and at trial the plaintiff recovers an amount greater than the settlement offer, then "the plaintiff shall be awarded actual costs accruing after the offer of the settlement to be paid by the defendant." See also Centric-Jones Co. v. Hufnagel, 848 P.2d 942, 947 (Colo. 1993) (en banc) (holding the award of costs under the statute to be non-discretionary).[7] The word "shall" plainly does not mean "[committed] to the sound discretion of the trial judge," but rather amounts to an "express statutory mandate." Chaparral, 849 F.2d at 1293. Thus, in the present case, Chaparral is

---

[7] We note, however, that although the award of actual costs is non-discretionary, the trial court retains discretion over the amount of actual costs awarded. See Scholz v. Metropolitan Pathologists, P.C., 851 P.2d 901, 910 (Colo. 1993) (en banc) (holding that "a trial court need only award actual costs that are reasonably incurred by a party under section 13-17-202").

inapposite because Colorado's express statutory mandate takes the case before us out of the discretionary ambit of Fed. R. Civ. P. 54(d), except insofar as cost limitations are explicitly dictated by federal statute, pursuant to Fed. R. Civ. P. 54(d)(1).[8]

We therefore reverse the decision of the district court on this claim and remand for a determination and award of "actual costs" under Colo. Rev. Stat. § 13-17-202(1)(a)(I).[9] Those costs must be awarded by the district court pursuant

---

[8] With respect to explicit federal statutory provisions under Rule 54(d)(1), Chaparral dealt with the comprehensive witness fee scheme of 28 U.S.C. § 1821, see Crawford, 482 U.S. at 442, in holding "the court was bound by the limitations set out in the federal costs statute," Chaparral, 849 F.2d at 1293. Insofar as elements of "actual costs" do not fall within such a comprehensive federal scheme, Chaparral is not controlling here. Cf. Huffman v. Caterpillar Tractor Co., 908 F.2d 1470, 1478 (10th Cir. 1990). The same can be said of our precedent in Gobbo Farms & Orchids v. Poole Chemical Co., 81 F.3d 122, 123-24 (10th Cir. 1996). Gobbo, which affirms an award of attorneys' fees pursuant to state law and the denial of costs as sanctions in a diversity action, cites Chaparral in dicta for the proposition that "Colorado law does not govern the award of costs." Id. at 123. Gobbo did not involve the application of a state cost-shifting statute but rather the exercise of the district court's discretion to award costs as sanctions pursuant to Fed. R. Civ. P. 54(d)(2)(E). See id. Moreover, because the foregoing dicta in Gobbo relies on Chaparral, it must be read in conjunction with Chaparral as inapplicable to situations in which costs fall outside a comprehensive federal scheme and in which the state legislature has made the award of costs mandatory through a sanctioning provision analogous to a fee-shifting statute.

[9] The record before us on appeal does not indicate the precise nature of the "actual costs" claimed. We therefore leave to the district court the correct application of the Colorado statute—read in conjunction with Fed. R. Civ. P. 54(d) and the relevant federal statutes—to the particular costs claimed in this case.

- 18 -

to Colorado law to the extent they constitute "costs other than attorneys' fees" under Fed. R. Civ. P. 54(d)(1) and are not preempted by a federal statute such as 28 U.S.C. § 1821,[10] and to the extent, if at all, they constitute "related non-taxable expenses" under Fed. R. Civ. P. 54(d)(2).

## IV

The decision of the district court is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** to the district court to determine and award "actual costs" to Garcia in accordance with this opinion.

---

[10] See Henkel v. Chicago, St. P., M. & O. Ry. Co., 284 U.S. 444, 447 (1932) ("Congress has definitely prescribed its own requirement with respect to the fees of [expert] witnesses . . . . [It] has made no exception of [these fees]. Its legislation must be deemed controlling, and excludes the application in the federal courts of any different state practice." (citations omitted)).