**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 10, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MELEA WELCH, Individually and As
Surviving Spouse of MICHAEL WELCH,
Deceased,

      Plaintiff-Appellant,

v.

LARRY CABELKA,

      Defendant-Appellee.

No. 07-6298
(D.C. No. 5:06-CV-00026-HE)
(W. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA, BRISCOE,** and **O'BRIEN,** Circuit Judges.

---

Plaintiff-Appellant Melea Welch ("Mrs. Welch") appeals the district court's denial

of her motion for a new trial in this diversity action. Mrs. Welch, the surviving spouse of

decedent Michael Welch ("Mr. Welch"), brought a negligence/wrongful death action

against Defendant-Appellee Larry Cabelka ("Mr. Cabelka") in the United States District

Court for the Western District of Oklahoma. After a jury verdict for Mr. Cabelka, Mrs.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Welch moved for a new trial, arguing, as pertinent here,[1] that: (1) the jury's verdict was against the clear weight of the evidence; (2) the jury's deliberations were tainted and confused as evident from a question posed by the jury; and (3) the jury instructions regarding Oklahoma law were in error.

We have jurisdiction over Mrs. Welch's appeal based on 28 U.S.C. § 1291 and affirm.

I

This case arises from a fatal traffic accident. Mr. Cabelka was driving a tractor that was pulling a no-till wheat drill ("farm implement") southbound on a two-lane paved county road in rural Oklahoma. Mr. Welch was driving his pickup northbound when his pickup collided with the farm implement's left horizontal extreme. Mr. Welch was fatally injured upon impact.

The farm implement had no lights on its front side[2] and the amount of natural light at the time of the accident was a disputed fact at trial. The sunset that evening occurred at 7:47 p.m., and under Title 47, Section 12-201(B) of the Oklahoma Statutes, every vehicle upon a highway must properly display all headlights, lamps, and illuminating devices beginning at any time one-half hour <u>after</u> sunset. Mr. Cabelka made his first call

---

[1] Mrs. Welch's motion to the district court pressed additional grounds for a new trial, but she does not appeal the denial of her motion on those grounds. <u>See</u> Aplt. App. at 80-101 (motion for new trial).

[2] The single headlight on the tractor was illuminated, but it was the farm implement with which Mr. Welch collided.

following the accident at 8:12 p.m., which he approximated was two minutes after the accident. The first emergency responder on the scene testified that he received a page concerning the accident while he was pouring concrete outdoors, at 8:22 p.m., approximately two miles from the scene, and that he was working at the time without the aid of artificial lighting. There was also testimony, however, that the farm implement could not be visually identified until a person was "right up on top of it." Aplt. App. Vol. II at 54.

Mr. Cabelka's accident reconstructionist testified that he observed the accident scene six days after the accident, at the same time of day as the accident, and he observed the natural lighting conditions to be enough light for a person to see Mr. Cabelka's tractor and farm implement. Mr. Cabelka testified he never transported an unlit farm implement during hours of darkness. Mr. Cabelka testified that, prior to impact, Mr. Welch was approaching him at a high rate of speed, and that he flashed his tractor's lights to try to get Mr. Welch's attention. Mr. Cabelka's testimony was inconsistent regarding the time of the accident, the use of his cellular phone after the accident, and his reactive behavior to the accident.

The proximity of the farm implement's left horizontal extreme to the center of the roadway was also a disputed fact at trial. One highway patrol trooper testified the farm implement encroached twenty-three inches into Mr. Welch's lane. However, discrepancies existed between the measurements taken by the two highway patrol troopers who investigated the accident. The discrepancies were over the width of the

3

roadway, the width of the farm implement, and how far Mr. Cabelka was over the imaginary center line. An individual from the local volunteer fire department testified that investigators were unable to walk between Mr. Cabelka's farm implement and the fence running parallel to the road, because Mr. Cabelka was so far to the right.

Mr. Cabelka testified that he attempted to move his tractor and farm implement off of the roadway to the right to allow Mr. Welch room to pass. In addition, Mr. Cabelka's tractor left tracks increasingly distant from the roadway, moving from sixteen inches to twenty nine inches off to the right of the roadway. Mr. Cabelka's accident reconstructionist concluded that Mr. Cabelka's farm implement was three inches over the imaginary center line and Mr. Cabelka was turning to avoid the impact immediately prior to the accident. The accident reconstructionist made additional findings that: (1) the width of the roadway was nineteen feet, six inches wide, making each lane of travel nine feet, nine inches wide; (2) Mr. Welch's vehicle was six feet wide; and (3) there was enough room for Mr. Welch to have passed by safely.

After the accident, Mrs. Welch filed suit against Mr. Cabelka, alleging Mr. Cabelka negligently failed to keep the left horizontal extreme of the farm implement within its own lane of travel. Mrs. Welch further contended that Mr. Cabelka towed the unlit farm implement during a time when sunlight was significantly compromised.

An Oklahoma statute governs the standard of care for the use of farm implements on the roadway, and at trial, the parties disputed the proper jury instructions on this point. The statute states:

4

A. A farm tractor . . . or implement may be operated on any other roadway in this state if the operator has attached all the safety devices required by law and has taken reasonable steps to reduce the width of the tractor or implement as provided for by the manufacturer. Whenever the width of a farm tractor or implement of husbandry exceeds the width of that portion of a roadway on which the tractor or implement is driven, which is marked as a single lane of traffic, or, if the roadway has not been marked for lanes of traffic and the width of the tractor or implement exceeds more than fifty percent (50%) of the width of the roadway, the operator shall move the tractor or implement, as soon as possible, as far to the right-hand side of the roadway as is practicable and safe upon approach of any oncoming or following vehicle and upon approaching the crest of a hill.

B. Upon the immediate approach of a farm tractor or implement of husbandry which cannot be moved by the operator thereof to the far right-hand side of the roadway, as required in subsection A of this section, due to the existence of any bridge or guardrail, sign or any other physical impediment which would not safely allow such tractor or implement to travel on the far right-hand side of the road, the driver of every other vehicle shall yield the right-of-way and shall immediately pull over to the far right-hand side of the road and remain in such position until the tractor or implement has passed.

C. This section shall not operate to relieve any operator of a farm tractor or implement of husbandry from the duty to drive with due regard for the safety of all persons using the roadway.

Okla. Stat. tit. 47 § 11-406. Mrs. Welch's counsel objected to the inclusion of subsection B to Title 47, section 11-406 of the Oklahoma Statutes, based upon the premise that a fence does not qualify as a "physical impediment" under the terms of the statute. Mrs. Welch's counsel did not request the inclusion of subsection C in the jury instructions, either before or after the district court overruled the objection to the inclusion of

5

subsection B of that statute.

After trial, during the jury's deliberations, the district court received a question from the jury regarding an exhibit introduced into evidence at trial. Regarding defendant's exhibit 15-1, the jury asked: "We need clarification on the time of day this photo was taken." Aplt. App. Vol. I at 75. Defendant's exhibit 15-1 was offered solely for the purpose of demonstrating that a pickup would have had enough room to pass safely by Mr. Cabelka's tractor and farm implement when they were pulled off of the roadway the same distance as they were the night of the accident. Mr. Cabelka's accident reconstructionist testified that the photograph was taken further down the road from the accident scene, at a point where the road was the same width as it was at the scene of the accident.

The district court proposed a response to the jury question, and neither counsel objected to the proposed response. It stated:

> With respect to your request for further information as to one of the photographs submitted in evidence, you are instructed that you have heard all the evidence admitted as to the photograph. You should rely on your individual and collective memories as to it or other matters in the case.

Id. at 76. Mrs. Welch's counsel responded that he "absolutely" agreed that the district court's proposed response to the jury question was appropriate. The jury later returned a unanimous verdict in favor of Mr. Cabelka.

II

*Was the Jury's Verdict Against the Clear Weight of the Evidence?*

6

Mrs. Welch moved for a new trial, arguing that the jury's verdict was against the great weight of the evidence. We review the denial of a motion for a new trial for abuse of discretion. Henning v. Union Pac. R.R. Co., 530 F.3d 1206, 1216 (10th Cir. 2008). Upon review of a motion for a new trial, all evidence is viewed in the light most favorable to the prevailing party. Escue v. N. Okla. Coll., 450 F.3d 1146, 1156 (10th Cir. 2006). "A motion for a new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the trial court. Thus, even if we do not necessarily agree with the jury's verdict, it must be upheld unless it is clearly, decidedly or overwhelmingly against the weight of the evidence." Id. at 1156-57 (internal quotations omitted).

The district court did not abuse its discretion when it denied Mrs. Welch's motion for a new trial. The evidence at trial showed that the accident occurred at a time when Oklahoma statutes did not require the use of headlights. (The evidence showed that sunset occurred at 7:47 p.m., the statute required the use of headlights at 8:17 p.m., and Mr. Cabelka's first phone call after the accident occurred at 8:12 p.m.) The jury also heard testimony that Mr. Cabelka saw Mr. Welch approaching him at a high rate of speed, that Mr. Cabelka flashed his tractor's lights at Mr. Welch as Mr. Welch approached, and that Mr. Cabelka's expert determined that there was enough natural light at the time of the accident to safely tow the farm implement. The first responder testified that he had been pouring concrete outdoors at his home without the use of artificial light, when he received

7

his call at 8:22 p.m.

In addition, the evidence at trial showed that, although Mr. Cabelka's farm implement was over the imaginary center line, Mr. Cabelka was so far right that investigators were unable to walk between Mr. Cabelka's farm implement and the fence running parallel to the road. Mr. Cabelka testified that he attempted to move his tractor and farm implement off of the roadway to the right to allow Mr. Welch room to pass. In addition, Mr. Cabelka's tractor left tracks increasingly distant from the roadway, moving from sixteen inches to twenty nine inches off to the right of the roadway. Mr. Cabelka's expert concluded that, although Mr. Cabelka's farm implement was three inches over the imaginary center line, he was turning to avoid the impact immediately prior to the accident and there was enough room for Mr. Welch to have passed by safely.

There was ample evidence presented to the jury for the jury to find for Mr. Cabelka. The evidence cited by Mrs. Welch supporting a contrary conclusion does not show that the jury's verdict is "clearly, decidedly or overwhelmingly against the weight of the evidence." Escue, 450 F.3d at 1157. The district court did not abuse its discretion in denying Mrs. Welch's motion for a new trial on this basis, and we affirm its ruling.

*Were the Jury's Deliberations Tainted and Confused?*

Mrs. Welch's second argument is more difficult to discern. She states:

> In deliberating the fact issue: 'How much natural light existed at the time of the collision' the jury relied upon evidence which was not offered for the purpose upon which it was so heavily relied; defendant's exhibit 15-1 was not offered to demonstrate the natural light conditions existing at the time of the

8

incident–yet obvious confusion existed among the jury as to the purpose for which defendant's exhibit 15-1 was offered into evidence. The confusion arising from the circumstances surrounding the jury's clearly erroneous reliance upon defendant's exhibit 15-1 resulted in an irregularity in the proceeding which warrants reversal directing a new trial be granted.

Aplt. Br. at 7-8. The legal support Mrs. Welch offers for her argument, however, only concerns the standards for granting a new trial based on the jury verdict being against the clear weight of the evidence. Mrs. Welch puts forth no legal argument, and we are aware of none, for how alleged "jury confusion" during deliberations entitles her to a new trial.

The alleged jury confusion is just that: alleged. Neither the district court nor the parties knew why the jury asked the question it did. In addition, Mrs. Welch agreed with the district court's answer to the jury's question, and certainly raised no objection to the district court's proposed response. See Garcia v. Wal-Mart Stores, Inc., 209 F.3d 1170, 1174 (10th Cir. 2000) (stating that, absent an objection to a jury instruction, the standard of review is for plain error and the "party claiming plain error has the heavy burden of demonstrating fundamental injustice"). Absent more than a mere allegation of jury confusion, and as we have concluded above, the jury was presented with sufficient evidence upon which to base its verdict in favor of Mr. Cabelka, we have no basis for concluding that the jury's verdict was fundamentally unjust.

*Were the Jury Instructions Regarding Oklahoma Law in Error?*

Mrs. Welch also argued in support of her motion for new trial that the jury was not properly instructed. This court must determine whether the jury instructions viewed as a

9

whole "properly stated the applicable law and directed the jury to consider matters within its province." Gardetto v. Mason, 100 F.3d 803, 816 (10th Cir. 1996). "A district court's decision to give a particular jury instruction is reviewed for abuse of discretion; ultimately, however, we apply a de novo standard of review to determine the propriety of an individual jury instruction to which objection was made at time of trial." Reed v. Landstar Ligon, Inc., 314 F.3d 447, 454 (10th Cir. 2002) (Murphy, J., concurring) (internal quotations omitted). "Absent a proper objection, we apply the plain error standard of review. But only rarely will we reverse based on allegedly erroneous instructions to which there was no objection at trial; the party claiming plain error has the heavy burden of demonstrating fundamental injustice." Garcia, 209 F.3d at 1174 (internal quotation omitted).

Mrs. Welch argues that the jury instruction given regarding Oklahoma law was in error because it was

> not an accurate statement of Oklahoma law in the context it was given. The trial evidence lacked any reference to a 'physical impediment' of the type contemplated by 'Part B' of the statute which would shift the legal duty owed by Mike Welch[.] The fence running parallel to the road is not the type of 'physical impediment' contemplated by 'Part B[.]' The instruction improperly created the inference that it was Mike Welch's duty to stop or yield upon encountering the combined unit[.]

Aplt. Br. at 22. The instruction given was a summarization of Title 47, section 11-406A-B of the Oklahoma statutes. The district court gave no instruction on subsection C. Mrs. Welch objected to the inclusion of subsection B of section 11-406, but did not address the

10

inclusion or exclusion of subsection C in her objection.

Section 11-406A permits a tractor to be operated on a roadway "if the operator has attached all the safety devices required by law and has taken reasonable steps to reduce the width of the tractor or implement as provided for by the manufacturer." Subsection A also requires that when the tractor takes up more than fifty percent of an undivided roadway, "the operator shall move the tractor or implement, as soon as possible, as far to the right-hand side of the roadway as is practicable and safe upon approach of any oncoming or following vehicle."

Subsection B provides an exemption, however. When a tractor "cannot be moved by the operator thereof to the far right-hand side of the roadway, as required in subsection A of this section, due to the existence of any bridge or guardrail, sign or any other physical impediment which would not safely allow such tractor or implement to travel on the far right-hand side of the road," then the driver of the approaching vehicle "shall yield the right-of-way and shall immediately pull over to the far right-hand side of the road and remain in such position until the tractor or implement has passed." Subsection C then reiterates that section 11-406 does not alter the operator's general duty to "drive with due regard for the safety of all persons using the roadway."

The evidence at trial made subsection B relevant and necessary. The evidence at trial was that the road was not divided, that Mr. Cabelka had moved his tractor and farm implement to the right, and that he had moved so far to the right that the first responders could not pass between the farm implement and the fence running parallel to the roadway.

11

The statute defines "physical impediment," including examples as a: "bridge or guardrail, sign or any other physical impediment which would not safely allow such tractor or implement to travel on the far right-hand side of the road." We reject Mrs. Welch's argument that a fence is not a "physical impediment." A fence is a physical structure, similar to a guardrail or a sign, that would prevent a tractor from moving any farther right than the fence, sign, guardrail, etc. allows. The district court "properly stated the applicable law." Gardetto, 100 F.3d at 816.

We conclude that further instruction on subsection C was not necessary. Because Mrs. Welch's counsel did not object to the exclusion of this subsection at trial, we review only for plain error. See Garcia, 209 F.3d at 1174 (requiring plain error review when no objection to a jury instruction is made "'before the jury retires to consider its verdict'" (quoting Fed. R. Civ. P. 51)). When the complete set of jury instructions is read together and considered as a whole, the jury was fully and adequately instructed as to the duty of care of Mr. Cabelka. See Aplt. App. Vol. I at 56 (jury instruction stating the necessary elements for finding liability), 57 (jury instruction defining negligence and ordinary care), 58 (jury instruction defining the rights and duties of drivers and stating that "[i]t is the duty of the driver of a motor vehicle to use ordinary care"). There can be no error when a review of the jury instructions shows that the district court properly stated the applicable law. Gardetto, 100 F.3d at 816. The district court did not err in denying Mrs. Welch's motion for a new trial based on improper jury instructions.

12

## III

We AFFIRM the district court's denial of Mrs. Welch's motion for a new trial.


Entered for the Court


Mary Beck Briscoe
Circuit Judge