**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

STEVEN A. STENDER; INFINITY
CLARK STREET OPERATING, LLC, on
behalf of themselves and all others
similarly situated,

     Plaintiffs - Appellants,

and

HAROLD SILVER,

     Plaintiff,

v.

ARCHSTONE-SMITH OPERATING
TRUST; ARCHSTONE-SMITH TRUST;
ERNEST A. GERARDI, JR.; RUTH ANN
M. GILLIS; NED S. HOLMES; ROBERT
P. KOGOD; JAMES H. POLK, III; JOHN
C. SCHWEITZER; R. SCOT SELLERS;
ROBERT H. SMITH; STEPHEN R.
DEMERITT; CHARLES MUELLER, JR.;
CAROLINE BROWER; MARK
SCHUMACHER; ALFRED G. NEELY;
LEHMAN BROTHERS HOLDINGS,
INC.; TISHMAN SPEYER
DEVELOPMENT CORPORATION;
RIVER HOLDING, LP; RIVER TRUST
ACQUISITION (MD), LLC; RIVER
ACQUISITION (MD), LP; ARCHSTONE-
SMITH MULTIFAMILY SERIES I
TRUST; ARCHSTONE, INC.;
AVALONBAY COMMUNITIES, INC.;
ARCHSTONE ENTERPRISE, LP; ERP

No. 18-1432

OPERATING LIMITED PARTNERSHIP;
EQUITY RESIDENTIAL,

Defendants - Appellees.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:07-CV-02503-WJM-MJW)**

_____

Daniel Townsend, Gupta Wessler PLLC, Washington, D.C. (Mathew W.H. Wessler, Gupta Wessler PLLC, Washington, D.C., and Kenneth A. Wexler and Kara A. Elgersma, Wexler Wallace LLP, Chicago, Illinois, and Lee Squitieri, Squitieri & Fearon, LLP, New York, New York, with him on the briefs), for Plaintiffs-Appellants.

Adam B. Banks, Weil, Gotshal & Manges LLP, New York, New York (Jonathan D. Polkes, Caroline Hickey Zalka, and Justin D. D'Aloia, Weil, Gotshal & Manges LLP, New York, New York, and Frederick J. Baumann and Alex C. Myers, Lewis Roca Rothgerber Christie LLP, Denver, Colorado, with him on the brief) for Defendants-Appellees.

_____

Before **HARTZ**, **SEYMOUR**, and **MATHESON**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

This appeal presents the question whether a federal district court exercising diversity jurisdiction can award costs under a generally applicable state law when those costs are prohibited by Federal Rule of Civil Procedure 54(d). The district court used a Colorado statute governing costs to award more than $230,000 in costs that would not be allowable under Rule 54(d). Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the costs award and remand for recomputation. The Supreme Court majority in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 399 (2010),

2

held that a valid Federal Rule of Civil Procedure governs over a state procedural rule if the two rules "answer the same question." Because Rule 54(d) answers the same question as the Colorado statute, and Rule 54(d) is not "ultra vires" (that is, applying it does not exceed statutory authorization or Congress's rulemaking power), there was no role left for the Colorado law. *Id.*

## I.    BACKGROUND

Disappointed with the outcome of a merger, minority-shareholder Plaintiffs brought a class action against Defendants for breach of contract and fiduciary duties. The parties litigated their dispute for over ten years across proceedings in arbitration and federal court. In the end the district court granted summary judgment in Defendants' favor, and this court affirmed. *See Stender v. Archstone-Smith Operating Trust*, 910 F.3d 1107, 1117 (10th Cir. 2018). Defendants then moved for costs under Rule 54(d). The district court awarded costs totaling $479,666.22, which included $230,250.01 in costs for electronic legal research and for attorney travel and lodging under a state cost-shifting statute.

## II.    DISCUSSION

Our analysis begins with a description of federal and Colorado law on costs. Next, we review the law governing when a Federal Rule of Procedure prevails over state law in diversity cases, and apply it to the present dispute. Finally, we address preservation.

3

### A. Federal Law on Costs

Rule 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."[1] Fed. R. Civ. P. 54(d)(1). The language appears open-ended. But relying on the history behind the provision, the Supreme Court has placed strict limits on what can be awarded.

In the Founding era congressional legislation permitted costs to prevailing parties provided by state law. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 564 (2012). Although that statute expired in 1799, "the practice of referring to state rules for the taxation of costs persisted" for half a century. *Id.* at 565. But two problems led Congress in 1853 to "standardize the costs allowable in federal litigation": (1) the "great diversity in practice among the courts," and (2) the "exorbitant fees" that had been imposed on losing litigants. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 251 (1975). In relevant part, the 1853 statute said "[t]hat in lieu of the compensation now allowed by law to attorneys, solicitors, and witnesses in the several States, the following *and no other compensation* shall be taxed and allowed." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987) (emphasis added, ellipsis and internal quotation

---

[1] Rule 54(d)(1) provides in full:

> Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

marks omitted).  The statute "specif[ied] in detail the nature and amount of the taxable items of cost in the federal courts," *Alyeska Pipeline*, 421 U.S. at 252, thereby "comprehensively regulat[ing] fees and the taxation of fees as costs in the federal courts," *Crawford Fitting*, 482 U.S. at 440.  The "substance of this Act was transmitted" through various statutory recodifications and is now codified as 28 U.S.C. § 1920, "without any apparent intent to change the controlling rules."  *Taniguchi*, 566 U.S. at 565 (internal quotation marks omitted).  Today, § 1920 enumerates six categories of costs that may be taxed:  (1) clerk and marshal fees, (2) fees for "recorded transcripts necessarily obtained for use in the case," (3) expenses for printing and witnesses, (4) expenses for exemplification and necessary copies, (5) docket fees, and (6) compensation of interpreters and court-appointed experts.  28 U.S.C. § 1920; *see Taniguchi*, 566 U.S. at 573 ("[T]axable costs are limited by statute and are modest in scope . . . .").

Most importantly, the Supreme Court has construed Rule 54(d) to be limited by § 1920.  As it held in *Crawford Fitting*, "§ 1920 *defines* the term 'costs' as used in Rule 54(d)."  482 U.S. at 441 (emphasis added).  The discretion provided by Rule 54(d) is "solely a power to decline to tax, as costs, the items enumerated in § 1920."  *Id.* at 442.  The Court explained:  "If Rule 54(d) grants courts discretion to tax whatever costs may seem appropriate, then § 1920, which enumerates the costs that may be taxed, serves no role whatsoever."  *Id.*; *see* 10 James Wm. Moore et al., *Moore's Federal Practice* § 54.103 at 185–86 (3d. ed. 2011) ("The *Crawford Fitting* rule that only those costs expressly allowed by statute may be awarded under Rule 54(d)(1) implicitly rejected a line of authority recognizing other possible sources for an award of costs, including local

5

rules, the custom of the district, and the court's general equitable powers."). *Crawford* concluded: "Any argument that a federal court is empowered to exceed the limitations explicitly set out in [28 U.S.C.] §§ 1920 and 1821 [setting limits on witness fees] without plain evidence of congressional intent to supersede those sections ignores our longstanding practice of construing statutes *in pari materia*." 482 U.S. at 445. Thus, it held "that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Id.* Within the last decade the Supreme Court has reaffirmed its rejection of "the view that the discretion granted by Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920." *Taniguchi*, 566 U.S. at 565 (internal quotation marks omitted). These cases make it crystal clear that Rule 54(d)(1) would not permit the award of costs for electronic legal research or for attorney travel and lodging.

## B.  Colorado Law on Costs

Colorado law is much more generous in awarding costs, although the letter of the law does not appear to be that different from federal law. Colorado Revised Statutes §§ 13-16-104 and –105 allow recovery of costs by plaintiffs and defendants respectively.[2]

---

[2]  Section 13-16-104, entitled "When plaintiff recovers costs," states in full:

If any person sues in any court of this state in any action, real, personal, or mixed, or upon any statute for any offense or wrong immediately personal to the plaintiff and recovers any debt or damages in such action, then the plaintiff or demandant shall have judgment to recover against the defendant

6

And Colorado Revised Statute § 13-16-122 provides a limited list of appropriate costs that a state court "may include." *See also* Colo. R. Civ. P. 54(d) ("Except when express provision therefor is made either in a statute of this state or in these rules, reasonable costs shall be allowed as of course to the prevailing party considering any relevant factors which may include the needs and complexity of the case and the amount in controversy."). But unlike the United States Supreme Court, the Colorado Supreme Court has treated the list of costs in its statute, § 13-16-122, as merely "illustrative rather than exclusive." *Cherry Creek Sch. Dist. No. 5 v. Voelker*, 859 P.2d 805, 813 (Colo. 1993). In Colorado, "absent a specific prohibition, the trial court has discretion over the awarding of costs." *Id.* (internal quotation marks omitted); *accord Roget v. Grand Pontiac, Inc.*, 5 P.3d 341, 348 (Colo. App. 1999) ("Absent a specific prohibition in the statute, a trial court has the discretion to award any reasonable costs requested."). The

---

his costs to be taxed; and the same shall be recovered, together with the debt or damages, by execution, except in the cases mentioned in this article.

Section 13-16-105, entitled "When defendant recovers costs," states in full:

If any person sues in any court of record in this state in any action wherein the plaintiff or demandant might have costs in case judgment is given for him and he is nonprossed, suffers a discontinuance, is nonsuited after appearance of the defendant, or a verdict is passed against him, then the defendant shall have judgment to recover his costs against the plaintiff, except against executors or administrators prosecuting in the right of their testator or intestate, or demandant, to be taxed; and the same shall be recovered of the plaintiff or demandant, by like process as the plaintiff or demandant might have had against the defendant, in case judgment has been given for the plaintiff or demandant.

7

district court relied on Colorado precedent to award costs for electronic legal research and attorney travel and lodging—none of which is listed in § 13-16-122. *See Cherry Creek*, 859 P.2d at 813–14 (expenses of taking discovery depositions); *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1193–94 (Colo. App. 2011) (travel for depositions and meetings with experts and clients); *Roget*, 5 P.3d at 348–49 (computerized legal research).

### C. Does Rule 54(d) Govern? / *Shady Grove*

Given that some costs permitted under Colorado law are not permitted under Rule 54(d), we must ask whether they are nonetheless permissible in a diversity case. Much of the answer can be found in the opinion in *Shady Grove*.

At issue in *Shady Grove* was the applicability of a New York law limiting class actions. A number of consumer-protection statutes provide a minimum penalty that can be awarded to a consumer who was the victim of a violation. In a class action against a violator, the total penalty could be immense. (A minimum penalty of $500 per consumer for a class of 10,000 would total $5 million.) To avoid this result, New York enacted a statute prohibiting class actions seeking statutory penalties. The effect of this statute in federal court came into question when Shady Grove Orthopedic Associates, P. A., brought a putative class action against Allstate Insurance Co. in federal court under diversity jurisdiction for failure to pay statutory interest penalties under a state insurance law. *See* 559 U.S. at 397. The district court and the circuit court applied the state class-action law and held that the suit could not proceed as a class action. *Id.* at 397–98. The

Supreme Court reversed, holding that Federal Rule of Civil Procedure 23 permitted the class action despite the state law.

There were three opinions. Four Justices dissented. Justice Scalia wrote an opinion joined in full by three Justices. Justice Stevens joined part of Justice Scalia's opinion (making that part a majority opinion) and wrote a separate concurring opinion. The majority opinion set forth the framework for resolving the issue: a Federal Rule governs over state law (1) when it "answer[s] the same question" as the state law, and (2) it is not "ultra vires." *Id.* at 399.

The majority opinion addressed the first step of the framework in a straightforward fashion. "The question in dispute is whether Shady Grove's suit may proceed as a class action. Rule 23 provides an answer." *Id*. at 398. It explained, "[The Rule] states that 'a class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id*. at 398 (brackets and citation omitted). Thus, the Rule was definitive: "By its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id*.

The Court rejected the circuit court's view that the state law and Rule 23 "do not conflict because they address different issues." *Id.* at 399. The circuit court said that Rule 23 concerns the criteria for determining whether the class should be certified, whereas the state statute "addresses an antecedent question: whether the particular type of claim is eligible for class treatment in the first place." *Id.* The Court provided an

9

explanation (which we need not repeat) of why it thought that "the line between eligibility and certifiability is entirely artificial." *Id.* But its rejection of the circuit court's analysis was more fundamental: "There is no reason, in any event, to read Rule 23 as addressing only whether claims made eligible for class treatment by some *other* law should be certified as class actions." *Id.* It continued: "Allstate asserts that Rule 23 neither explicitly or implicitly empowers a federal court to certify a class in each and every case where the Rule's criteria are met. But that is *exactly* what Rule 23 does." *Id.* (internal quotation marks omitted).

Allstate pointed out that the New York statute barring penalty class actions had another subsection establishing certification criteria similar to those in Rule 23, and it argued that this demonstrated that the provision at issue "concerns a separate subject" from certification criteria. *Id.* at 400. The Court was unpersuaded. "[T]he question before us," it said, "is whether [the state statute] *concerns a subject separate from the subject of Rule 23*." *Id.* (emphasis added). The answer was easy: "Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements." *Id*. at 401. The essential point was that "[b]oth of [the New York statute's] subsections undeniably *answer the same question* as Rule 23: whether a class action may proceed for a given suit." *Id*. (emphasis added).

The majority opinion also rejected the dissent's arguments that the state statute and Rule 23 could be reconciled by interpreting Rule 23 to avoid the conflict. *See id.* at 437 (Ginsburg, J., dissenting); *id.* at 446–47 (Rule 23 "does not command that a

10

particular remedy be available when a party sues in a representative capacity"; it "allows state law to control the size of a monetary award a class plaintiff may pursue"). The majority opinion responded, "We cannot contort [Rule 23's] text, even to avert a collision with state law that might render it invalid." *Id.* at 406 (majority opinion). Conflict could not be avoided because "Rule 23 unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met." *Id.*

Writing for a plurality of four Justices, Justice Scalia then proceeded to address whether Rule 23 was constitutional and within the authority granted by the Rules Enabling Act, 28 U.S.C. § 2072. On the constitutional issue he wrote that "Congress has undoubted power to supplant state law, and undoubted power to prescribe rules for the courts it has created, so long as those rules regulate matters rationally capable of classification as procedure." *Id.* (plurality opinion of Scalia, J.) (internal quotation marks omitted). Under this power Congress enacted the Rules Enabling Act. The pertinent limitation on those rules is stated in subsection (b) of the Act: "Such rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Noting that the Supreme Court had "rejected every statutory challenge to a Federal Rule that has come before us," Justice Scalia said that the Court had "long held that this limitation means that the Rule must 'really regulat[e] procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Shady Grove*, 559 U.S. at 407 (plurality opinion of Scalia, J.) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)). "The test is not whether the rule affects a litigant's substantive rights; most procedural rules do. What

11

matters is what the rule itself regulates:  If it governs only the manner and the means by which the litigants' rights are enforced, it is valid; if it alters the rules of decision by which the court will adjudicate those rights, it is not." *Id.* (citation, brackets, and internal quotation marks omitted).

The dissent did not question or otherwise address the validity of Rule 23.  But Justice Stevens's concurrence departed from the plurality on this point, rejecting its approach to determining validity.  He viewed the plurality's approach of looking only to the Federal Rule itself as inconsistent with the text of the Rules Enabling Act.  *See id.* at 424–25 (Stevens, J., concurring).  To give teeth to the requirement that Federal Rules not "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b), Justice Stevens's analysis would "turn[] on whether the state law actually is part of a State's framework of substantive rights or remedies," *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring).  He would decline to apply a Federal Rule to the extent that it "would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423.  Justice Stevens nevertheless concluded that the New York law was not intertwined with state rights or remedies, as shown by the textual reading of the New York law; its applicability to all claims, regardless whether based on federal, New York, or other state law; and analysis of the potential purposes behind the law.  *See id.* at 432–36.

As indicated by the dissent of four Justices stating that the majority opinion had departed from Court precedent, *see, e.g.*, *id.* at 442–43 (Ginsburg, J., dissenting), *Shady*

12

*Grove* was a turning point in the Supreme Court's doctrine regarding the relationship between the Federal Rules and state law. At the least, it represented a clarification of prior opinions. Thus, this court has recognized that *Shady Grove* is a critical case on the choice-of-law analysis. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) ("We believe the Supreme Court's subsequent decision in *Shady Grove* . . . informs the proper analysis of [whether state law or federal law governs whether a statutory damage cap is an affirmative defense or a pleading requirement] . . ."); *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 983 (10th Cir. 2010) ("The Supreme Court, in *Shady Grove* . . . recently clarified the analysis for determining whether a federal rule or state law governs."). We now examine how *Shady Grove* applies to the case before us.

### D.  Application of *Shady Grove*

The inescapable conclusion we draw from *Shady Grove* is that Colorado's general laws for assessing costs do not apply in this case. Under step one of the Supreme Court majority's analysis, the question is whether the state laws "answer the same question" as the Federal Rule. *Shady Grove*, 559 U.S. at 399 (majority opinion); *see also id.* at 400 ("[T]he question before us is whether [the state laws] concern[] a subject separate from the subject of [the Federal Rule]."). They certainly do. Rule 54(d) and Colorado's §§ 13-16-104 and -105 tell the courts what costs can be awarded to a prevailing party. The subjects of the Federal Rule and the state statutes are the same. We cannot artificially divide each Colorado statute and say that the statute (1) addresses the same subject matter as the Federal Rule when it allows those costs permitted by the Federal

13

Rule and (2) then addresses a different subject when it allows costs for other expenses incurred by litigants that are impermissible under the Rule. Both of these "components" of the Colorado statute would still answer the same question as Rule 54(d). *See id.* at 401 ("Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of [its class-action] statute to track Rule 23 and enacting another part that imposes additional requirements. Both of [the New York statute's] subsections undeniably answer the same question as Rule 23: whether a class action may proceed for a given suit.").

And the answers to the costs question given by the Federal Rule and the Colorado statutes cannot be reconciled. If, say, Rule 54(d) or 28 U.S.C. § 1920 had stated that the district court should ordinarily award certain types of costs but made clear that other, unspecified types could also be awarded in the court's discretion (which is how the Colorado courts read § 13-16-122), we see no reason why the district court could not look to state law to guide its discretion. But that is not the Federal Rule. *Crawford Fitting* and *Taniguchi* have held that the only costs that can be awarded under Rule 54(d) are those specified in § 1920, and neither attorney travel nor computerized legal research is so specified. Allowing for a discretionary award of costs unavailable under Rule 54(d) would run contrary to the Supreme Court's interpretation of that Rule.

The second part of the *Shady Grove* analysis is determining whether application of Rule 54(d) to override the Colorado costs statutes is valid under the Rules Enabling Act and constitutional, or instead is ultra vires. Under the approach of the *Shady Grove* plurality, that application clearly passes muster. The relevant restriction in the Act is that

14

a Rule "not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Following *Sibbach*, the plurality stated that the restriction means only that the Rule "must really regulate procedure,— the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Shady Grove* 559 U.S. at 407 (plurality opinion of Scalia, J.). (brackets and internal quotation marks omitted). As noted by the plurality, the Supreme Court has thus far "rejected every statutory challenge to a Federal Rule that has come before [it]." *Id.* Turning to this case, we need not belabor whether Rule 54(d) is a procedural rule. We are aware of no authority suggesting that it is not. Awarding costs has for centuries been part of "the judicial process for enforcing rights and duties recognized by substantive law." *Sibbach,* 312 U.S. at 14; *see* 10 Moore, *supra* § 54.103[2] at 184 ("The issue of what costs may be awarded incident to the judgment is a procedural issue . . . ."). And because Rule 54(d) is a procedural rule, it unquestionably is within Congress's constitutional powers. *See Hanna v. Plumer*, 380 U.S. 460, 472 (1965) (the Constitution conveys "a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either").) Under the approach of the plurality in *Shady Grove*, Rule 54(d) undoubtedly prevails.

Justice Stevens chose a different tack, although his approach led to the same result in *Shady Grove* and leads to the same result here. In his view, whether application of a Federal Rule violates the Rules Enabling Act requirement that "rules shall not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b), can depend on the state

15

law that the Rule would otherwise displace. He wrote that the Rules Enabling Act forbids preemption of a state law that "is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." 559 U.S. at 423 (Stevens, J., concurring). In *Shady Grove* he decided that the state class-action provision regarding claims for penalties was not such a law. He noted that it was not tied to a state right or remedy because it applied to "claims based on federal law or the law of any other State." *Id.* at 432. He said that "[i]t is therefore hard to see how [the New York statute] could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies." *Id.*

That identical reasoning applies here. Nothing about the Colorado statutes indicates a judgment about the scope of state-created rights or remedies. Sections 13-16-104 and -105 are general cost-shifting statutes that apply in every case, even to "claims based on federal law or the law of any other State." *Id.*; *see Archer v. Farmer Bros. Co.*, 90 P.3d 228, 229, 232 (Colo. 2004) (affirming award of costs under C.R.C.P. 54(d) and § 13-16-105 to defendants who prevailed on claims under federal Age Discrimination in Employment Act and Americans with Disabilities Act as well as state-law claims). Again, "[i]t is therefore hard to see how [the Colorado statutes] could be understood as . . . rule[s] that, though procedural in form, serve[] the function of defining [Colorado's] rights or remedies." *Id.* Justice Stevens's analysis might well reach a different conclusion if the Colorado statute were restricted to costs in specific areas, such as in

16

civil-rights or employment-discrimination claims. Then it could be viewed as part of the state remedy. But that is not our case.

This court has held that Justice Stevens's concurrence states Supreme Court law under the rule stated in *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks and citation omitted)). *See Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 n.3 (10th Cir. 2018); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217–18 (10th Cir. 2011); *Garman*, 630 F.3d at 983 n.6. Others, including then-Judge Kavanaugh, think that the view of the plurality opinion governs on step two of the analysis because it merely restates law settled by *Sibbach* and no other Justice (including the dissenters) expressed agreement with the concurrence. *See Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1336–37 (D.C. Cir. 2015). But we need not confront this disagreement. Simply put, a challenge in this case under the Rules Enabling Act fails under any available Supreme Court doctrine. Because Rule 54(d) falls well within the statutory authorization of the Rules Enabling Act and its displacement of Colorado state law would not impair any state substantive right, we hold that a federal court exercising diversity jurisdiction has no power to award costs under §§ 13-16-104 or -105.

### E. Preservation of Issue

Despite our conclusion that the award of costs under Colorado law was error, we may still need to affirm the award. In rejecting Plaintiffs' motion for reconsideration of the costs award, the district court ruled that they had not previously argued adequately that federal law precluded a costs award under state law. If the issue was not properly preserved in district court, we can reverse only if the requirements of the plain-error doctrine are satisfied. *See Singh v. Cordle*, 936 F.3d 1022, 1041 (10th Cir. 2019). "To obtain relief under that standard, the party must show (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

The issue is a close one, but we respectfully disagree with the district court and believe that Plaintiffs adequately preserved their challenge to the award of costs under Colorado law. In their motion to stay, deny, or reduce the cost calculation pending the merits appeal, Plaintiffs argued that the court should award only those costs enumerated in 28 U.S.C. § 1920, citing the United States Supreme Court's decision in *Crawford Fitting*. They argued that § 1920 does not authorize costs for electronic research or attorney travel and lodging. Then, in a letter to the court clerk regarding the calculation of costs, Plaintiffs asserted, citing *Chaparral Resources v. Monsanto*, 849 F.2d 1286, 1292 (10th Cir. 1988), that "a federal court has no discretion to award costs that are not statutorily permitted under federal law unless such costs are statutorily mandated." *Id.* at 1903–04. The letter specifically challenged the award of costs for electronic research. Finally, in their motion for review of the clerk's costs award, Plaintiffs again stated that

18

the Court had "no discretion to award items as costs that are not set forth in § 1920 . . . unless they are authorized by . . . state statute or agreement of the parties. *Id*. at 1828–29 (citing *Crawford Fitting* and *Garcia v. Walmart Stores, Inc*., 209 F.3d 1170, 1177 (10th Cir. 2000).).

We recognize that Plaintiffs' argument did not track the analysis we have applied. They did not even cite *Shady Grove*. And they conceded, contrary to what we now decide to be the applicable law, that costs can be awarded under state law if the specific costs are "statutorily mandated" or "authorized" by the state law. Nevertheless, we think that Plaintiffs did preserve (although barely) an argument that the challenged costs were not permissible under this court's decisions in *Chaparral* and *Garcia*. In *Chaparral* we held that the district court had erred in awarding expert-witness fees beyond what was allowed under federal law. In dictum we suggested, however, that a court could award costs under state law if the award was under "an express statutory mandate." 849 F.2d at 1292. As for *Garcia*, the state law in question was not a costs statute generally applicable to prevailing parties but a Colorado statutory provision permitting an award of actual costs to a plaintiff when the defendant rejected a pretrial settlement offer lower than the eventual judgment. *See* 209 F.3d at 1173. We leave for another day a determination of whether the state law would survive the asks-the-same-question test of *Shady Grove*, which was decided a decade after *Garcia*. Relevant here, *Garcia* followed *Chaparral*'s dictum in applying the state law. At one point it spoke in terms of whether state law "authorizes" the costs award. *Id*. at 1177. But it later explained that the

19

Colorado provision had been interpreted by the Colorado courts as "non-discretionary." *Id*. at 1178.

Thus, we could have seen our task on this appeal as evaluating whether the challenged costs award was permissible under *Chaparral* and *Garcia*: that is, whether the award would have been mandatory under Colorado law and therefore permissible or whether it was discretionary and impermissible. Under that approach, Plaintiffs may very well have prevailed. But the pertinent language of *Chaparral* and *Garcia* has been superseded by later Supreme Court opinions. And we do not believe we would be performing our duty to provide guidance to the lower courts if we resolved this appeal under superseded doctrine. When, as here, a party argues that the district court's ruling is contrary to general law and does not satisfy a previously recognized exception to the general law, we think it appropriate to point out that the previously recognized exception is clearly no longer good law and then decide that the party is correct that the court's ruling was contrary to the general law. In short, Plaintiffs did just enough to preserve the winning argument.

## III.    CONCLUSION

We **VACATE** the district court's award of costs and **REMAND** for entry of a revised costs award consistent with this opinion.