FILED
United States Court of Appeals
Tenth Circuit

June 28, 2021

Christopher M. Wolpert
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL LOWELL,

Defendant - Appellant.

No. 20-2014

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 2:18-CR-01108-KG-1)**

---

John C. Arceci, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Appellant.

Marisa A. Ong, Assistant United States Attorney (John C. Anderson, United States Attorney, with her on the brief), Office of the United States Attorney for the District of New Mexico, Las Cruces, New Mexico, for Appellee.

---

Before **TYMKOVICH**, Chief Judge**, KELLY**, and **McHUGH**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

Daniel Lowell and his girlfriend went on a Bonnie and Clyde-esque crime spree that turned deadly. While on their way to cash in a stolen car and credit

cards, the pair were pulled over outside Las Cruces, New Mexico. A high-speed chase ensued. They carjacked a Toyota 4Runner and eventually law enforcement lost track of them for two and a half hours in Las Cruces, during which time they did drugs and shoplifted items from Walmart that they could use to steal another car. After an officer spotted the 4Runner, another chase ensued, but this time it ended tragically when their car crashed into a motorcyclist, killing him.

Lowell pleaded guilty to numerous crimes, including carjacking resulting in death in violation of 18 U.S.C. § 2119(3), and was sentenced to 449 months' imprisonment. On appeal, Lowell challenges the validity of his guilty plea, as well as the district court's application of the United States Sentencing Guidelines (USSG). Lowell argues that his conviction for carjacking resulting in death is invalid because he lacked the specific intent to cause the motorcyclist's death while in the act of carjacking. But § 2119(3) merely requires but-for causation, not specific intent to cause the death. Lowell further argues that the district court erred by applying the first-degree murder cross reference in USSG § 2B3.1(c). We disagree. The cross reference applies to carjacking because the crime is a species of robbery, and here, the cross reference was properly applied to Lowell because the events leading up to the crash were part of a single crime spree and the motorcyclist's death was thus in the perpetration of the carjacking. Finding no error below, we affirm Lowell's conviction and sentence.

## I. Background

### A. The Crime Spree

Lowell and his girlfriend were drug users looking for ways to support their habits. Lowell stole a truck in Colorado and knew of a stolen goods buyer in California. So, in November 2017, the pair left Colorado to cash in the stolen truck, as well as some stolen credit cards. While traveling through New Mexico high on methamphetamine, they encountered a United States Border Patrol immigration checkpoint. The agent ran the truck's license plate and learned the truck was stolen. The pair could not produce any form of identification, so the agent asked Lowell to turn off the truck's engine. But instead, Lowell fled.

The first chase lasted over half an hour. Lowell drove erratically, both with and against traffic. Eventually one of the truck's tires blew out. Lowell stopped the truck facing oncoming traffic, forcing vehicles to stop. One vehicle forced to stop was a Toyota 4Runner with a family of four inside. Lowell and his girlfriend exited the truck and approached the 4Runner with a loaded gun. Lowell pointed the gun at the driver and demanded he turn over the vehicle. The family exited the 4Runner and the pair took off in the 4Runner with Lowell's girlfriend driving. Border Patrol agents continued to pursue Lowell and his girlfriend in the 4Runner until they approached Las Cruces. The agents decided to call off the chase around 2:49 p.m. rather than risk endangering the public with a high-speed chase on busy urban roads.

Over the next two and a half hours, Lowell, his girlfriend, and law enforcement were busy. Lowell and his girlfriend smoked meth, scoped out the parking lots of a gym and an apartment complex looking for cars to break into, and went to Walmart, where Lowell shoplifted spark plugs that he planned to use to break into another vehicle. Law enforcement (which, by now, comprised four agencies) continued their efforts to locate Lowell and his girlfriend. They employed a helicopter to survey the area, prepared to use spike strips and close off intersections to stop the 4Runner, obtained location information from the 4Runner driver's phone left behind in the car and sent personnel to those areas, deployed units throughout Las Cruces, and conducted interviews.

Then, around 5:11 p.m., a second chase began after an officer spotted the 4Runner. Like the first chase, Lowell drove with and against traffic. Lowell also wove in and out of traffic on city streets and highways, sped through red lights, hit a police vehicle, and drove through a fence onto an access road. The police also made numerous unsuccessful attempts to disable the 4Runner by ramming it.

Tragically, the chase ended when the 4Runner—going 61 miles per hour in a 45—struck a motorcycle and killed the driver. Lowell and his girlfriend fled the scene on foot and, after a few failed attempts to carjack other vehicles, were finally arrested.

**B. Procedural History**

-4-

Lowell was charged with numerous crimes, including carjacking resulting in death in violation of 18 U.S.C. § 2119(3). Ten days before his scheduled trial, Lowell decided to enter a guilty plea. At his change of plea hearing, the district court accepted the factual basis for the crime provided by the government and found it sufficient to support Lowell's guilty plea. Lowell was then convicted of carjacking resulting in death.

Although Lowell was convicted of many crimes, the Presentence Investigation Report (PSR) determined his guidelines range was driven entirely by the carjacking resulting in death count because of the grouping rules of USSG § 3D1.4. The PSR began with the general robbery guideline of § 2B3.1, but then concluded the cross reference in § 2B3.1(c)—which instructs that if a victim was killed under circumstances that would constitute felony murder under 18 U.S.C. § 1111, then the court should instead apply § 2A1.1 for first-degree murder—applied to Lowell. The PSR reasoned that Lowell's offense constituted felony murder because the death of the motorcyclist occurred in the perpetration of a robbery, one of 18 U.S.C. § 1111's enumerated offenses supporting felony murder. The only objection Lowell made to the PSR was that the district court should not apply the cross reference to him because the motorcyclist's death was not "in the perpetration of" the carjacking. Lowell argued that the carjacking had been completed hours before and he had reached a point of temporary safety

between chases. The district court overruled Lowell's objection based on relevant evidence from a two-day evidentiary hearing and applied the cross reference.

With the cross reference, Lowell's base offense level was 43 (almost a 20-point increase), the highest offense level in the Guidelines and one that renders a "range" of life imprisonment, regardless of a defendant's criminal history category. But the district court departed to a base offense level of 38 because USSG § 2A1.1 recommends a departure for felony murders where the defendant did not intend to cause death. Thus, with a base offense level of 38 and a criminal history category of III, Lowell's guidelines range was 292 to 365 months' imprisonment.

The district court sentenced Lowell to 365 months' imprisonment, to be followed by a mandatory consecutive sentence of 84 months for brandishing a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c) for a total of 449 months' imprisonment.

## II. Analysis

Lowell challenges both his conviction and sentence on appeal. As to his conviction, he contends the district court plainly erred in accepting the factual basis for his guilty plea. And as to his sentence, he argues the district court improperly applied the cross reference to the first-degree murder guideline in USSG § 2B3.1(c) to his crime of carjacking.

We disagree and affirm Lowell's conviction and sentence.

## A. Lowell's Conviction

Lowell was convicted of carjacking resulting in death in violation of 18 U.S.C. § 2119(3).[1] He asserts for the first time on appeal that the district court erred by accepting his guilty plea because he did not cause a death resulting from a carjacking, therefore not satisfying the factual predicate necessary for the final element of 18 U.S.C. § 2119(3). In his view, the specific intent to cause death in the statute's prefatory paragraph is satisfied only if the defendant specifically intended to cause a death while carjacking and that intended death occurred.

---

[1] The statute provides:

> Whoever, *with the intent to cause death or serious bodily harm takes a motor vehicle* that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> > (1) be fined under this title or imprisoned not more than 15 years, or both,
> >
> > (2) if serious bodily injury (as defined in section 1365 of this title, including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
> >
> > (3) *if death results*, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (emphasis added).

Because this argument was not made in district court and was thus forfeited, we review it for plain error.[2] *See In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1271 (10th Cir. 2019). To satisfy this standard, Lowell "must show (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 948 (10th Cir. 2020) (internal quotation marks omitted).

Our analysis begins and ends with the first requirement of the plain error standard because we conclude the district court did not err by accepting Lowell's guilty plea. The "death results" element of 18 U.S.C. § 2119(3) requires but-for causation. But-for causation is "[t]he cause without which the event could not have occurred." Black's Law Dictionary (11th ed. 2019). The Supreme Court has explained that "it is one of the traditional background principles against which Congress legislates that a phrase such as 'results from' imposes a requirement of but-for causation." *Burrage v. United States*, 571 U.S. 204, 214 (2014) (internal quotations omitted; alterations incorporated). Thus, "[w]here there is no textual or contextual indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality." *Id*. at 212.

---

[2] The government argues that Lowell waived, not forfeited, this argument. But we need not reach this issue because we conclude the district court did not plainly err by accepting Lowell's guilty plea.

Lowell urges that the text of 18 U.S.C. § 2119 points to the contrary—namely, the prefatory paragraph. He argues that "[t]he most natural reading of § 2119 is that the scope of the resultant harm must be understood in the context of the preceding conditional intent element and *its* contemplated harms." Aplt. Br. at 14 (emphasis original). Thus, Lowell contends the death must occur during the "taking" of the carjacked vehicle; a subsequent death down the road does not qualify. Lowell points to the scope-of-subparts canon of statutory interpretation. This canon holds that "[m]aterial contained in unindented text relates to all the following . . . indented subparts." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 156 (2012). Applied here, the material contained in § 2119's prefatory paragraph (unindented text) relates to § 2119(3) (an indented subpart).

But relation is different than rewriting a statute, which is exactly what Lowell's proposed reading does. Lowell contends that a carjacker must specifically intend to cause death or serious bodily injury while in the act of carjacking, and the carjacker is only subject to the statute's enhanced penalty provisions if his specific intent is realized by killing or seriously injuring the person he intended to kill or seriously injure while in the act of carjacking. Said another way, Lowell argues that the specific intent required by the statute's prefatory paragraph covers the subparts. He therefore implies that only death or serious injuries connected to the immediate taking are covered by the statute.

And because he did not intend to cause the motorcyclist's death when he carjacked the 4Runner, Lowell asserts he is only guilty of § 2119(1), not § 2119(3). But Congress wrote "death results," not "the intended death results." To adopt Lowell's interpretation, then, would rewrite the statute.

We analyzed similar statutory language in *United States v. Burkholder*, 816 F.3d 607 (10th Cir. 2016). There, we considered whether the causation required by the phrase "death . . . results from" in 21 U.S.C. § 841(b)(1)(E)(i) was but-for or proximate causation.[3] *Id*. at 614. We first examined the language of the statute, concluding that "the causal language that Congress employed itself strongly suggests that § 841(b)(1)(E)(i) requires only but-for causation." *Id*. at 614. We noted that "[g]enerally . . . the ordinary meaning of 'results from' imposes a requirement of actual or but-for causation, and not proximate causation." *Id*. (internal quotations omitted; alteration incorporated). We continued that "the use of the passive voice evinces a concern with whether something happened—not how or why it happened." *Id*. (internal quotations omitted). Finally, we observed that although Congress knows how to use proximate causation language in statutes, it did not do so in § 841(b)(1)(E)(i), "suggest[ing] that Congress intended to omit a proximate-cause requirement[.]"

---

[3] Section 841(b)(1)(E)(i) "establishes a statutory-maximum sentence of fifteen years' imprisonment for the distribution of a Schedule III controlled substance if 'death . . . results from the use of' that substance[.]" *Burkholder*, 816 F.3d at 611.

*Id*. at 615–16. We thus concluded that "the plain language and statutory context of the 'results from' language in § 841(b)(1)(E) reveal a clear Congressional choice to forgo a proximate-cause requirement." *Id*. at 621. Accordingly, "§ 841(b)(1)(E)(i)'s provision that 'death . . . results from' . . . requires only proof of but-for causation." *Id*.

The same "death results" language we analyzed in *Burkholder* is at issue here. Lowell argues that *Burkholder*'s consideration of 21 U.S.C. § 841(b)(1)(E)(i) does not offer a "meaningful interpretive analogy" because, unlike 18 U.S.C. § 2119, 21 U.S.C. § 841(b)(1)(E)(i) lacks "conditional intent prefacing the resulting harms[.]" Aplt. Br. at 15. That may be so, but *Burkholder* nonetheless provides an understanding of "death results" language, which clearly connotes a but-for rather than proximate causation standard. And just as we recognized in *Burkholder* that Congress knows how to use proximate causation language and yet did not, suggesting it intended to omit it, Congress also knows how to use specific intent language, yet it left § 2119(3)'s "death results" element unadorned, suggesting Congress intended but-for causation. *See Burrage*, 571 U.S. at 211 (explaining that the "results from" language in 21 U.S.C. § 841 "imposes . . . a requirement of actual causality," proof "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct").

Turning back to 18 U.S.C. § 2119, if a defendant (1) carjacks or attempts to carjack, (2) a vehicle that has an interstate commerce connection, (3) with the

intent to cause death or serious bodily injury or harm, then the defendant committed the crime of carjacking under § 2119 and will therefore be subject to punishment based on whether no harm resulted (§ 2119(1)), serious bodily injury resulted (§ 2119(2)), or death resulted (§ 2119(3)). The specific intent required in § 2119's prefatory paragraph is not tied to the punishment subsections; in fact, it is clearly tied to the act of carjacking in the prefatory paragraph. So, if elements (1) through (3) are satisfied, and the carjacking is the but-for cause of a death, *see Burrage*, 571 U.S. at 214, irrespective of the defendant's intent in causing that death, the defendant is subject to the penalties of § 2119(3).

Applying that logic here, the government offered a factual basis for Lowell's guilty plea because the evidence showed Lowell's carjacking was the but-for cause of the motorcyclist's death. The government stated to the district court:

> The United States would present evidence from both – the doctor who saw [the motorcyclist] at the hospital immediately after impact; that he died of blunt-force trauma. The United States would also present evidence from a doctor who did an autopsy of [the motorcyclist] confirming that fact. Had [the motorcyclist] not been hit at such a high rate of speed from [Lowell], he would not have died.

R., Vol. III at 32. Because there was a factual basis for Lowell's guilty plea, the district court did not err by accepting Lowell's guilty plea and convicting him of violating 18 U.S.C. § 2119(3).

We therefore affirm Lowell's conviction.

## B. Lowell's Sentence

Lowell also challenges his sentence on the ground that the district court incorrectly calculated his guidelines range. He asserts the district court improperly applied the cross reference to the first-degree murder guideline contained in USSG § 2B3.1(c) to his crime of carjacking, and even if this was not error, Lowell further asserts that the cross reference is inapplicable to him because the motorcyclist's death was not "in the perpetration of" the carjacking as required to constitute felony murder. We disagree and thus affirm Lowell's sentence.

### 1. Application of Cross Reference to Carjacking

The Guidelines treat carjacking as a subset of robbery in USSG § 2B3.1.[4] Although the base offense level for carjacking is typically 22, § 2B3.1(c) explains that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." The first-degree murder guideline requires a base offense level of 43 and a sentence of life imprisonment. *See* USSG § 2A1.1. The application notes explain

---

[4] The PSR used the 2018 version of the Guidelines, although the 2016 version was appropriate. This does not affect our analysis, however, because the relevant guidelines are identical in the 2016 and 2018 Guidelines.

that "[t]his guideline applies in cases of premeditated killing," or "when death results from the commission of certain felonies." *Id*., comment (n.1).

The cross reference to the first-degree murder guideline contained in USSG § 2B3.1(c) is applicable only if a carjacking death would constitute felony murder under 18 U.S.C. § 1111. Section 1111(a) defines "murder" as "the unlawful killing of a human being with malice aforethought." It further defines "murder in the first degree" as "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery[.]" *Id*.

The district court applied the cross reference to the first-degree murder guideline because it determined a carjacking death constituted felony murder under 18 U.S.C. § 1111. This conclusion necessarily rested on the district court's view that "robbery" referenced in § 1111 encompasses carjacking. Lowell did not object below to the application of the cross reference and first-degree murder guideline, so we review his challenge for plain error. *See In re Rumsey*, 944 F.3d at 1271.

Lowell argues that the district court's application of the cross reference and first-degree murder guideline constituted error because the plain terms of § 1111 do not include "carjacking." And although Lowell recognizes that carjacking is a type of robbery—an offense specifically enumerated in § 1111—he explains that carjacking is nevertheless its own separate offense with elements and penalties

distinct from robbery. Accordingly, its omission from § 1111 means carjacking is not felony murder.

Lowell further notes that when § 1111 was codified, carjacking was not yet a federal crime. Since it became a federal crime in the 1990s, however, Congress has not added it to the enumerated offenses in § 1111, even though Congress amended § 1111 twice in the meantime. Lowell thus urges that Congress's failure to amend § 1111 following the enactment of the federal carjacking statute suggests that carjacking is excluded from § 1111.

We disagree with Lowell that carjacking may not be an underlying felony to support felony murder. Carjacking is a species of robbery. *See Jones v. United States*, 526 U.S. 227, 235 (1999) (noting "carjacking is a type of robbery"); *Holloway v. United States*, 526 U.S. 1, 8 (1999) ("The carjacking statute essentially is aimed at providing a federal penalty for a particular type of robbery."). Congress recognized as much when it placed the carjacking statute in the robbery and burglary chapter of Title 18, Chapter 103 of the United States Code. And although when 18 U.S.C. § 1111 was originally adopted, "robbery" could not have included the yet-to-be-created federal crime of carjacking, that does not foreclose its inclusion post-enactment. Indeed, there was no reason for Congress to amend § 1111 to add carjacking because "robbery" already included it.

Lowell is correct that robbery and carjacking have distinct elements. But this is of no moment. Section 1111 lists categories of crimes that encompass multiple offenses with distinct elements. We recognized this principle in *United States v. Nichols*, 169 F.3d 1255 (10th Cir. 1999). There, we rejected the defendant's argument that the offense of using an explosive weapon of mass destruction did not constitute felony murder per 18 U.S.C. § 1111 because it was unenumerated. *Id*. at 1273. Instead, we determined the crime was "functionally equivalent to the 'arson' listed in 18 U.S.C. § 1111(a)." *Id*. We found this functional equivalency even though the elements of arson and the elements of use of an explosive weapon of mass destruction are distinct. *Compare* 18 U.S.C. § 81 ("Whoever . . . willfully and maliciously sets fire to or burns any building, structure or vessel, any machinery or building materials or supplies, military or naval stores, munitions of war, or any structural aids or appliances for navigation or shipping, or attempts or conspires to do such an act, shall be [punished].") *with* 18 U.S.C. § 2332(a) (1994) ("A person who, without lawful authority, uses . . . or conspires to use . . . a weapon of mass destruction . . . against any person or property within the United States, and . . . [interstate commerce element] shall be [punished]."). Thus, as used in § 1111, arson is a category of crime that the offense of using an explosive weapon of mass destruction falls within. So too is robbery a category of crime that the offense of carjacking falls within. *See, e.g.,* *United States v. Rodriguez-Adorno*, 695 F.3d 32, 43 (1st Cir. 2012) (applying the

first-degree murder cross reference to carjacking as a type of robbery); *United States v. Hicks*, 103 F.3d 837, 848–49 (9th Cir. 1996), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc) (same).

"Robbery" within the meaning of 18 U.S.C. § 1111 encompasses carjacking. As a result, application of the cross reference to the first-degree murder guideline contained in USSG § 2B3.1(c) to Lowell's crime of carjacking was not error, so long as the motorcyclist's death was "in the perpetration of" the carjacking.

### 2. *"In the Perpetration of" the Carjacking*

A carjacking constitutes felony murder under 18 U.S.C. § 1111 only if the relevant death was "in the perpetration of" the carjacking. The district court found that the motorcyclist's death was in the perpetration of the carjacking. Lowell argues that the motorcyclist's death was in the perpetration of flight, not the carjacking, because he had reached a point of temporary safety between the carjacking and the death.

We agree with the district court and Lowell that at *some* point the scope of a carjacking can be terminated if a defendant reaches a point of temporary safety. This makes sense, as this inquiry is also relevant to robbery law, where multiple distinct robberies can be committed by a single defendant, and carjacking is a species of robbery. *See United States v. Patton*, 927 F.3d 1087, 1100 (10th Cir. 2019) ("Reaching a place of temporary safety is . . . relevant to robbery law.").

-17-

Considerations relevant to whether a defendant reached a point of temporary safety include law enforcement's actions, the defendant's actions, the defendant's state of mind, the elapsed time between the carjacking and the murder, and whether the defendant had unchallenged possession of the carjacked vehicle.

The application of this standard to the facts is a mixed question of fact and law that we review "under the clearly erroneous or de novo standard, depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles." *Id*. at 1101 (internal quotations omitted; alterations incorporated). Here, the facts are not in dispute, so we review whether the district court properly applied the facts to the legal standard de novo.

Lowell did not reach a point of temporary safety so as to terminate the scope of the carjacking. After carjacking the 4Runner, Lowell and his girlfriend actively evaded police for two and a half hours. During that time, four law enforcement agencies actively worked to apprehend him. They used a helicopter to survey the area, prepared to close intersections and use spike strips to disable the 4Runner, tracked data from the 4Runner driver's phone left in the vehicle, and responded to 911 calls from motorists who reported an erratic driver. Lowell stopped at Walmart to steal spark plugs to continue fleeing from law enforcement, planned to steal another vehicle, and did drugs. Although Lowell had unchallenged possession of the 4Runner for two and a half hours and his location was unknown to police, law enforcement's pursuit and Lowell's flight were both

-18-

ongoing. Both Lowell and his girlfriend believed they were still being actively pursued. Because Lowell did not reach a point of temporary safety between the carjacking and the motorcyclist's death, the death was "in the perpetration of" the carjacking and thus constitutes felony murder under 18 U.S.C. § 1111.[5]

The district court therefore properly applied the USSG § 2B3.1(c) cross reference to Lowell.

## III. Conclusion

In light of the above, we **AFFIRM** the district court.

---

[5] Whether a defendant reached a point of temporary safety is a highly fact-intensive inquiry that must be assessed on a case-by-case basis. Although we conclude these facts do not warrant a finding that Lowell reached a point of temporary safety, we might reach a different conclusion based on other facts. As the First Circuit put it: "If the carjacking is so successful that the defendant completely evades capture and simply retains the vehicle for his own use, it cannot be the case that any subsequent traffic accident, after any interval of time whatsoever, is part of the carjacking." *United States v. Martinez-Bermudez*, 387 F.3d 98, 102 n.6 (1st Cir. 2004).